## STATE v. CHARLES EMERY.

*Criminal Law.   Arson.   Plea in Abatement.   Duplicity. General Demurrer.   Evidence.   Once in Jeopardy.*

1. PLEA IN ABATEMENT.  A plea in abatement must be certain to every intent; and it must stand or fall on its own allegations, unless there be an express reference to the indictment; thus, *it was held*, on general demurrer to a plea purporting to raise the disqualification of one of the grand jurors and the illegality of the organization of the grand jury, that the plea was bad, in that it was not alleged that the objectionable grand juror acted with the panel in finding the indictment; in that the allegation, that he was not "a legal voter of the county," was lacking in certainty as to what county; in that the allegations, that he was not one of the "judicious men of the county," that the panel did not constitute a legal grand jury, present conclusions of law; that the mere reference in the plea to "said indictment" did not show, except by inference, what indictment had been pleaded to; and that duplicity could be reached by general demurrer.

2. JEOPARDY.  The trial had commenced and the evidence nearly in when one of the jurors was taken sick, and the panel was thereupon discharged; *Held*, that the prisoner had not been in jeopardy.

3. CIRCUMSTANTIAL EVIDENCE.  The respondent was charged with burning a barn; and it was. claimed that he was hostile to the husband of the owner of the barn; *Held*, that circumstantial evidence was admissible to show that the respondent knew that the husband had cattle in the barn when it was burned, to prove a motive.

4. GOOD CHARACTER.  Proof of good character, by the rules of evidence, is limited to general reputation, and more is matter of favor.

INDICTMENT for arson and burning—in three counts.   Trial by jury, December Term, 1885, Orange County, ROWELL, J., presiding.   Verdict, guilty.

The first count alleged setting fire to a dwelling-house; the second and third counts alleged the burning of a barn.   It was averred that said barn was the property of Sarah Emery, who was the wife of Harry Emery, a half-brother of the respondent. Harry Emery was called as a witness by the State, and having testified that certain cattle were burned with the barn, it was proposed to ask him whose property the cattle were.   On objection by the respondent, the state's attorney stated that he

offered it to show motive in connection with threats of the respondent against said Harry.

At the June Term, 1885, a plea in abatement was filed, to which was a general demurrer. The demurrer was sustained. The respondent was then arraigned and pleaded not guilty, and was put upon trial. One of the jurors was taken sick during the trial, and thereupon the panel was discharged. The respondent then moved that he be discharged, for that he had been in jeopardy. This motion was denied. Plea:

" Saith that said indictment was found and returned at the present term of said court by persons acting as a grand jury, which said persons did not constitute a legal grand jury; that said persons were not legally selected, summoned and qualified as a grand jury as aforesaid. And especially he saith that Daniel Emery, a person who acted and served as one of the grand jurors, finding said indictment, was summoned to fill up the panel under and by virtue of the provisions of section eight hundred and ninety-seven of the Revised Laws of Vermont, and that said Daniel Emery was not then and there, nor afterward, nor when said indictment was found, nor when the same was returned into court here one of the judicious men of the county, and not a citizen nor a legal voter of the county; that said Daniel Emery at the time he was summoned as aforesaid to fill up said panel, was and ever since has been related to the said Charles Emery within the fourth degree of consanguinity; that is to say, the said Daniel Emery was and now is uncle by consanguinity to the said Charles Emery."

*John H. Watson* and *Heath & Willard*, for the respondent.

The plea is not double. To constitute duplicity there must be more than one distinct, traversable, material fact. If conclusions of law are stated in the plea they may be rejected as surplusage. *Anonymous,* 3 Salk. 122; *Gibbs* v. *Cope,* Comb. 297; *Carpenter* v. *McClure,* 37 Vt. 127; 1 Bish. Cr. Proc. s. 456; Gould Pl. c. 9, s. 8 *n.* The fact that Daniel Emery acted in finding the indictment is sufficiently alleged. *State* v. *Rickey,* 5 Halst. (N. J.) 83; R. L. s. 692. The respondent had been once in jeopardy. *State* v. *Whipple,* 57 Vt. 637; *Alexander* v. *Commonwealth,* 105 Pa. St. 1.

State v. Emery.

E. W. Smith, State's Attorney, and S. B. Hebard, for the State.

The plea must stand or fall on its own allegations. Bowman. v. Stowell, 21 Vt. 309. It does not appear, except by inference, that the respondent was indicted at all, or for what crime, if any. The plea should point out wherein the grand jury was not legally constituted, and allege directly that Daniel Emery acted as a grand juror. Landon v. Roberts, 20 Vt. 286; Peason v. French, 9 Vt. 349; 1 Bish. Cr. Proc. s. 856.

As to duplicity, see 1 Chit. Pl. 456. The respondent had not been once in jeopardy. United States v. Peres, 9 Wheat. 579; State v. Champeau, 52 Vt. 313; 1 Bish. Cr. Proc. 1032.

The opinion of the court was delivered by

Ross, J. I. The demurrer to the plea in abatement was properly sustained. The plea is wanting in the necessary certainty for a good plea in abatement in not alleging several necessary matters. "Though a plea in bar being certain to a common intent is good, every dilatory plea or in abatement must be good to every intent." 4 Bac. Abr. 51. The indictment is not referred to nor made a part of the plea. Hence the plea must stand or fall upon the allegations therein made. There is nothing in the plea which makes it with certainty a plea to this indictment. The offence charged in the indictment, referred to as "said indictment," is not named in the plea. For aught that is alleged, the plea referred to some other indictment pending in the court against the respondent. It is only inferentially that the court can know that it is a plea to this indictment. Again, there is no certain, direct allegation that the objectionable grand juror acted with the panel in finding the indictment. What is alleged on that subject is by way of recital, and insufficient. Landon v. Roberts, 20 Vt. 286.

The allegation that the panel was not legally selected, qualified and summoned, and did not constitute a legal grand jury, without alleging wherein the illegality consists, presents

a conclusion of law supported by no traversable facts, and is wholly insufficient in such a plea. The allegation that Daniel Emery was not one of the "judicious men of the county" is similarly faulty.

The allegation that he was "not a citizen nor a legal voter of the county" lacks the certainty required in such a plea. It is not alleged of what county he was not a citizen or legal voter. It might be the county of some other state or country. There is too much uncertainty, and too much left to be inferred, in all these particulars to make a good plea in abatement. Then the plea is open to the objection of duplicity, in that it alleges— not with the certainty required in such a plea, but sufficiently to present an issue of fact—the non-citizenship of Daniel Emery and his relation by consanguinity to the respondent. Non-citizenship would be a legal disqualification of the alleged objectionable grand juror, and so would his alleged relation to the respondent. The respondent contends that the defect of duplicity cannot be taken avdantage of by general demurrer to a plea in abatement even. He cites several authorities to support· this contention. The question in the authorities cited arose in civil actions, and in no instance on a plea in abatement. The authorities cited sustain the contention that in that class of pleas at common law duplicity could be reached by special demurrer only ; but in reference to pleas in abatement, says Mr. Chitty, vol. 1, p. 465, of his work on pleading : "If the plaintiff demur it is not necessary to assign any special causes." The same was held in Landon v. Roberts, 20 Vt. 286. In speaking of duplicity in pleading, Judge Isaac F. Redfield, in delivering the opinion of the court, on page 288 says : "To correct any misapprehension on the subject it may be well to say that all defects in abatement may now be reached by general demurrer." In Culver v. Balch, 23 Vt. 618, it is held without discussion that duplicity in pleas in abatement may be reached by general demurrer. Whatever the rule at common law, we think it is settled by the decisions in this State that duplicity in pleas in abatement is bad when encoun-

State v. Emery.

tered by general demurrer. Hence, for various good reasons the County Court sustained the demurrer to the respondent's plea in abatement.

II. After the panel were sworn, and the trial had commenced and proceeded until the respondent's evidence was nearly in, one of the jurors was taken sick and unable to go on with the trial: The jury thereupon were discharged. The respondent then moved to be discharged from further answering the indictment, for that he has once been put in jeopardy thereon. To the denial of this motion the respondent excepted. There was no error in the denial. The books speak of a jeopardy of a prisoner commencing when the jury are sworn and are charged with his trial. His jeopardy then arises from the fact that the court and the jury and a full tribunal are fully organized, have taken the prisoner in charge and have entered upon the trial, which, if nothing intervenes, may result in an acquital or conviction. But in the event the jury, or court, or prisoner, in the progress of the trial, become unable to proceed with the trial, his jeopardy at once ceases. If it were known when the trial was entered upon that the judge would be stricken down or die, so that there would be no competent court to finish the trial; or that the panel would become disqualified by the sickness or death of one of the jurors; or that the jury would be unable to find a verdict; or that the respondent would be unable to proceed with the trial because of sickness or escape from custody, the respondent would not be put in peril or jeopardy by such commencement of the trial. The jeopardy of the respondent by the commencement of such trial is dependent upon the presumption that the tribunal will continue legally organized, with the respondent in charge to the end of the trial, and in the end pronounce a valid judgment for or against the respondent. In case some matter occurs in the course of the trial which conclusively rebuts this presumption, it also rebuts the conclusion or presumption of the jeopardy of the prisoner by reason of the commencement of the trial. If the respondent takes the case to the higher courts on excep-

State v. Emery.

tions, and the trial is found erroneous, and a new trial granted, it was never heard that he could not be retried because he had been once in jeopardy on the same charge. Yet, on the respondent's contention he was in jeopardy the moment the jury were duly charged with his trial, and whatever might intervene to prevent a legal judgment of acquital or conviction, he could not be further tried because he had once been in jeopardy on the same charge.

State v. Champeau, 52 Vt. 313, is full authority that no such doctrine prevails in this State, and for the action of the County Court in holding the respondent for full trial.

III. There was circumstantial evidence tending to show that the respondent knew that Harry Emery owned the cattle burned. The respondent's only exception to the testimony to show Harry Emery owned the cattle is, that it must be proved directly, and not by inference, that the respondent knew he owned them. If it is meant by the exception that the proof must come from a living witness on the stand, instead of from circumstances tending to show such knowledge, it is without foundation. Circumstantial evidence may be of the most forcible and reliable kind, fully equal to that given by a witness. If it be meant that the circumstances relied upon were not potent and weighty to show such knowledge, it furnishes no just ground of exception. It was not for the court to pass upon the weight to be given to the circumstances adduced. It was only called upon to determine whether they had a legitimate tendency to show such knowledge. It was the province of the jury to determine their weight and potency. This exception cannot be sustained.

IV. The only other exception now relied upon is to the refusal of the court to allow Frank Wilton, who had testified that he had known the respondent four years, and had heard no evil reports against him, to be asked whether or not he had been an orderly, industrious citizen. The rule in regard to the admission of evidence of general good reputation or character is stated in 1 Best on Ev. 486, as follows: " It is com-

State *v.* Emery.

petent to him to defend himself by proof of previous good character, reference being had to the nature of the charge against him;" quoting from 1 Phill. Ev. (10 ed.) 502: " On a charge for stealing, it would be absurd to inquire into the prisoner's loyalty or humanity; or on a charge of high treason, it would be equally absurd to inquire into his honesty and punctuality in private dealings.   *   *   *   The inquiry should be to his general character among those who have known him, with a view of showing that his general reputation for honesty is such as to render unlikely the conduct imputed to him. And even the individual opinion of a witness, founded on his own personal experience of the disposition of the accused, is inadmissible"; quoting again from Phil. Ev. : " It frequently occurs, indeed, that witnesses, after speaking to the general opinion of the prisoner's character, state their personal experience and opinion of his honesty; but when this statement is admitted, it is rather from favor to the prisoner than strictly as evidence of its general character." The authorities cited by the respondent's counsel, when carefully read, are not in conflict with the above rule, but support it. . By this rule the court properly excluded the offered evidence.   The witness had already testified to the general opinion in regard to the respondent's character.   The offered testimony called for the witness' own knowledge, and not that of general opinion; be sides, it. had no particular relation to the crime charged. Though many judges, as a matter of favor, might have admitted it, the respondent was not entitled to it as a matter of right.

The respondent's exceptions are unsustained, and judgment rendered that he takes nothing thereby.