## State of Vermont v. John H. Parker, Jr.

[545 A.2d 512]

No. 83-536

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes,[1] JJ.**

Opinion Filed March 4, 1988

---

[1] Justice Hayes was present at oral argument but did not participate in the decision.

394

*Kevin G. Bradley,* Chittenden County State's Attorney, and *Robert Andres,* Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*James W. Murdoch* and *Richard C. Bothfeld* of *Wool & Murdoch,* Burlington, for Defendant-Appellant.

**Peck, J.** Defendant, John H. Parker, Jr., appeals a decision of the district court convicting him of two counts of sexual assault in violation of 13 V.S.A. § 3252, and one count of lewd conduct with a minor in violation of 13 V.S.A. § 2602. We affirm.

On appeal, defendant claims (1) that the trial court erred in its treatment of his motion in limine to limit the State's offer of certain prior "bad acts"; (2) that the trial court admitted certain expert testimony in violation of his patient's privilege; (3) that the trial court erred by allowing juror questions during trial; (4) that the prosecutor indulged in prejudicial misconduct and overkill during the course of the trial; (5) that the trial court abused its discretion when it denied his motion for a mistrial; (6) that the trial court erred by rejecting a pretrial plea agreement; and (7) that the trial court imposed an excessive sentence.

On February 17, 1983, the state's attorney filed an information charging defendant with sexual assault. This information was subsequently amended to charge the offenses for which he was ultimately convicted as set forth in the first paragraph above, all allegedly committed against J.P., a minor under the age of sixteen who was the second in age of three male juveniles domiciled in defendant's home.

The jury returned a verdict of guilty; defendant's motion for a new trial and for a stay pending appeal were denied. The court imposed a combined sentence of 12 to 45 years. We discuss the issues raised seriatim.

## I.

Shortly before trial defendant filed a motion in limine seeking to prohibit the introduction of evidence that he had also sexually assaulted D.P., the older brother of J.P. He maintained that this evidence was either inadmissible under V.R.E. 404(b) or, in the alternative, that the evidence was unfairly prejudicial and confusing and should be excluded under V.R.E. 403. In arguing that the evidence was admissible under the exceptions contained in

404(b), the State reasoned that evidence of assaults by defendant against D.P., in conjunction with a statement allegedly made by defendant to the older boy,[2] tended to demonstrate a continuing plan of sexual assaults, a motive for similar acts against J.P., and defendant's intent to gratify his illicit cravings through the conduct with which he was charged, regardless of the victim.

The court ruled initially that sexual activity between defendant and D.P. would be admitted to explain defendant's statement to the boy. Nevertheless, the court ruled further that admissibility would be restricted to the thirty-day period preceding the alleged statement. The court warned, however, that if defendant put his character in issue (see V.R.E. 404(a)(1)) or, specifically, as the trial judge phrased it, he claimed "I'm not that kind of guy," it would "open the door" for further rebuttal testimony of his activity with D.P.

During the course of a lengthy and searching cross-examination, the prosecutor questioned defendant as to why J.P. was the only one of the children who slept on a cot in his room. Defendant responded that J.P. asked that he might do so, and that if any of the others had asked, they would also have been permitted to sleep there. He testified that he saw nothing wrong with the boys sleeping in his room, and concluded with the assertion "I am not perverted." As a consequence of this declaration, the court ruled that the quoted statement put defendant's character in issue, expanded its thirty-day limitation, and permitted the State to introduce evidence of defendant's conduct with D.P. during a one-year period.

█ We recognize that both under the common law and V.R.E. 404 the admission of evidence offered by the State, relating to the character of the accused in a criminal case, "for the purpose of proving that he acted in conformity therewith on a particular occasion," V.R.E. 404(a), is severely restricted. However, there are limited exceptions. One of these exceptions allows the introduction of such evidence by the prosecution to *rebut* "[e]vidence of a pertinent trait of his character offered by an accused." V.R.E. 404(a)(1), and see Reporter's Notes to V.R.E. 404 generally, including cases cited.

---

[2] The substance of the alleged statement by defendant to D.P. was that he no longer needed him because J.P. was now available for the same purpose.

■ A second exception, described by the prosecutor in arguing for the admissibility of evidence relating to the relationship between D.P. and defendant, is set forth in V.R.E. 404(b). Although that rule generally *excludes* "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show that he acted in conformity therewith," it also provides that such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation [and] plan . . . ."

It appears that the court's initial ruling was based on V.R.E. 404(b), while its ruling, expanding the time period to rebut defendant's own express assertion of a relevant character trait, relied on 404(a)(1).

Rule 404 echoes the common law which preceded it. The rules of evidence were adopted and promulgated in December, 1982, and became effective April 1, 1983. The events which gave rise to the charges in this case occurred in "May-June 1981" and in July and December of 1982. Prior to the effective date of the rules, this Court stated:

> As a general rule, courts do not allow parties to prove that a person did the thing in question by proving that he or she had in the past done a similar thing.

*State* v. *Patnaude*, 140 Vt. 361, 370, 438 A.2d 402, 405 (1981). However, exceptions were also recognized if there is "a necessary or probable connection between the two." *Id.* at 371, 438 A.2d at 406. In another case, this Court stated:

> Such evidence may be admissible, however, to show motive, intent, knowledge, a plan or purpose, or preparation, leading up to or connecting the defendant with the commission of the offense charged, even though it involves proof of a distinct crime.

*State* v. *Ryan*, 135 Vt. 491, 497, 380 A.2d 525, 529 (1977) (citations omitted).

The principle in V.R.E. 404(a)(1), granting the right to rebut evidence of a pertinent character trait offered by a defendant, is also recognized at common law:

> "A respondent in all criminal cases is entitled to the privilege of putting his character in issue. If he offers evidence of

> his good character the prosecution can rebut it; and the jury have the right to give it such weight as they think it is entitled to."

*State* v. *Hedding,* 114 Vt. 212, 214, 42 A.2d 438, 440 (1945) (quoting *State* v. *Daley,* 53 Vt. 442, 446 (1881)). In the same case, however, this Court cited the caveat that the specific character trait must relate to the act charged, "otherwise it would not be relevant and therefore not admissible." *Id.* at 214-15, 42 A.2d at 440 (citing 1 Wigmore on Evidence § 59, at 128; *State* v. *Emery,* 59 Vt. 84, 89-90, 7 A. 129, 131-32 (1886)).

It is clear that evidence offered by the prosecution which addresses the character of an accused in a criminal case may be admissible for impeachment and for certain other purposes under V.R.E. 404 as well as our common law. Our next task, therefore, is to address the test to be applied in reviewing the trial court's admission of such evidence in the case before us. This test requires us to undertake the two-part inquiry described in *State* v. *Picknell,* 142 Vt. 215, 454 A.2d 711 (1982), in which we said:

> First, we must decide whether the admitted evidence was both relevant and material to the subject cause of action. If so, our second consideration is whether the introduction of such evidence was so prejudicial to defendant as to outweigh its probative value.

*Id.* at 230, 454 A.2d at 718.

## A.

■ There can be no reasonable doubt that the testimony of D.P. was relevant and material in that it tended to rebut defendant's statement, "I am not perverted," which involved a "specific trait related to the act[s] charged." *Hedding,* 114 Vt. at 214, 42 A.2d at 440; V.R.E. 404(a)(1).

Moreover, while it is true that the mere fact of defendant's prior conduct with another male juvenile, standing alone, would not be sufficient, any more than would prior acts of burglary by an accused be legally relevant under most circumstances to prove that he committed a later burglary, see the general rule quoted above from *Patnaude,* 140 Vt. at 370, 438 A.2d at 405, the situation here is not the same.

Unlike those cases contemplated by the general rule, there is a clear connection, a nexus, between the two series of sexually inspired actions, first against D.P., and later against J.P. Defendant took advantage of their common domicile, and the youth of D.P., to carry out a clandestine and furtive course of conduct with the older boy. This he did for a substantial period of time, until the maturing youth himself indicated his unwillingness to continue. Thereupon, defendant turned to the younger boy, J.P., seeking and finding, for a time, another source for the same gratification of his illicit appetite, under the same domiciliary circumstances; circumstances offering the same opportunities with at least a minimal risk which could not be assured had he gone more widely into the community at large.

These factual elements satisfied the exception to the general rule. They tended to show defendant's motive for his assaults on J.P.: his desires continued unabated, and his prior source of gratification had come to an end. Similarly, they tend to show his intent and his plan: to continue his course of conduct; the victim was immaterial, as such. Finally, the common domicile of defendant and the boys provided a more accessible and safer opportunity that could not be duplicated outside of the home.

To say, in the revealing light of the record before us, that this case falls under the *Patnaude* rule, by arguing that defendant's relations with D.P. are not logically relevant to any of the elements of the crime charged, or are only marginally probative, is illogical in itself. The phrase "crystal clear," a favorite of attorneys, and of judges in writing opinions, has become almost meaningless because of its all-too-frequent use to describe legal waters that are, in fact, muddy at best and anything but "clear"; the same is true of the word "obvious." Nevertheless, we dare apply these terms to the testimony of D.P. It is as clear as it is obvious that it was D.P.'s unwillingness to continue his relationship with defendant that motivated the latter, driving him to J.P., seeking a like gratification, with the intent to do so. This evidence was substantial and highly probative.

We hold that the testimony of D.P. was indisputably relevant. The first prong of the *Picknell* test was satisfied.

## B.

■ Having ruled that the relevance requirement of *Picknell* was satisfied, our second and final consideration of D.P.'s testimony must be "whether the introduction of such evidence was so prejudicial ‘to defendant as to outweigh its probative value." *Picknell*, 142 Vt. at 230, 454 A.2d at 718. This consideration is also contemplated by V.R.E. 403, which reads:

> Although relevant, evidence *may* be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

(Emphasis added.)

At the outset we note two key elements in 403. First, the operative phrase as to the trial court's powers and obligations under the rule is *"may* be excluded" (emphasis added); exclusion of such evidence is, therefore, a matter of discretion if its probative value is substantially outweighed by the dangers of prejudice; it is not an absolute. Second, a determination that the evidence in question will "prejudice" the defendant is not necessarily sufficient, standing alone, to activate the discretionary function in his favor. Virtually all evidence for the prosecution in a criminal case is prejudicial to some degree at least against the accused. Underlying 403 in its entirety is the proposition that a discretionary decision regarding the admission of evidence challenged as unfairly prejudicial involves a balancing of the competing concerns for its relevance, on the one hand, and the extent of its prejudicial effect, on the other. *State* v. *Dorn*, 145 Vt. 606, 616, 496 A.2d 451, 456 (1985).

The balancing test may not always be easy to apply in these relevance-versus-prejudice cases, assuming both are manifest. As Chief Justice Barney wrote in *State* v. *Angelucci*, 137 Vt. 272, 277, 405 A.2d 33, 35-36 (1979):

> [I]t must be understood that criminal activity cannot go unprosecuted because elements relevant to its establishment are simultaneously prejudicial from some other point of view unrelated to the crime. Thus there comes a point of relevance that cannot be overcome because of some prejudicial effect.

Regardless of the difficulty in making these decisions, because some degree of prejudice is inevitable, it is always possible that different judges might reach different decisions if confronted with identical problems. This consideration, by itself, does not justify this Court in merely substituting its judgment for that of the trial court which, in the first instance, properly exercised its judgment. We have held that "[t]his Court will not interfere with discretionary rulings [of the trial court] that have a reasonable basis, even if another court might have reached a different conclusion." *State* v. *Foy*, 144 Vt. 109, 115, 475 A.2d 219, 223 (1984) (citation omitted); a discretionary ruling of the trial court "will not be set aside simply because a different result might have been supportable, or because another court might have reached a different conclusion . . . ." *In re L.R.R.*, 143 Vt. 560, 562, 469 A.2d 1173, 1175 (1983).

A third factor must also be examined in the light of the record confronting us. Rulings which lie within the discretionary powers of the trial court will not be set aside by this Court on appeal, absent a showing, by the party claiming it, of an abuse of that discretion. *State* v. *Carter*, 142 Vt. 588, 592, 458 A.2d 1112, 1115 (1983). Further, "[t]o support a claim of abuse of discretion, defendant must show that the court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable." *State* v. *Dorn*, 145 Vt. at 616, 496 A.2d at 457 (citing *State* v. *Chambers*, 144 Vt. 377, 381, 477 A.2d 974, 977 (1984)). This burden is a heavy one and often difficult to satisfy; nevertheless, it has always been the standard. *State* v. *Foy*, 144 Vt. at 115, 475 A.2d at 223. It would be dangerous and confusing to deviate from or abandon that standard now simply because of the possibility that a different judge or, for that matter, this Court might have reached a different result and, indeed, be able to rationalize that conclusion as logically as any other. Discretionary judicial acts are not subject to mathematical formulas or other scientific analysis subject to the computerized exactitude of but one infallible answer. On the contrary, judges are human; their discretionary acts are the result of human judgment. As an appellate court, we must be diligent to avoid being lured into the attractive trap of substituting our judgment for that of the trial judge for no other reason than that it is different; that way lies usurpation and appellate arrogance.

> In cases of this nature, the [trial] court is called upon to exercise its sound judgment and discretion. *Regardless of what this Court or some other court might have done* in the circumstances, the record does not show that the discretion of the lower court was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable, which is the recognized test in this state.

*Nichols* v. *Nichols*, 134 Vt. 316, 317-18, 360 A.2d 85, 86 (1976) (emphasis added) (citation omitted).

We cited *Nichols* with approval in a more recent case in which we said:

> It is probably demonstrable that what one judge may do in exercising his discretion in a given situation, another would have done quite differently. But this is not the test. We have pointed out on several occasions that where a matter of judicial discretion is involved, a ruling of the trial court will not be set aside because another court, *or even this Court*, might have reached a different conclusion.

*Ohland* v. *Ohland*, 141 Vt. 34, 39, 442 A.2d 1306, 1309 (1982) (emphasis added).

This first issue on appeal is now reduced to the single question whether the trial judge so exceeded the limits of his broad discretionary powers in admitting the relevant testimony of D.P. that we have no choice but to rule that he "abused" (a strong word, not to be lightly applied) his discretion. We examine this issue in the light of V.R.E. 403, having in mind also the heavy burden cast upon the defendant to show the existence of abuse, and our policy against a substitution of judgment.

It is difficult to suggest an argument to support the claim of an *abuse* of discretion which is any more than a mere substitution of judgment. Certainly we are not confronted here with a failure to exercise discretion at all. It is clear from the record itself that the decision to admit the testimony of D.P. was made only after the court heard and carefully considered arguments by both counsel. To argue that D.P.'s evidence was not probative, or only minimally so at best, does not stand up under an impartial analysis. The probative value of D.P.'s testimony, however prejudicial it may have been, was highly significant in its tendency, as we have noted above, to establish motive, opportunity, intent, prepara-

tion, and plan on the one hand, and on the other, as firm rebuttal to the accused's own defensive characterization of himself: "I am not perverted."

In our further consideration of this character testimony, we have examined the transcript carefully, and find no suggestion that defendant was tricked or intimidated by the prosecutor into putting his character in issue during cross-examination. It is true that the examination was searching and resolute, as is commonly the case in the questioning of witnesses by experienced trial counsel for both sides. But criminal litigation is not a sporting event, and the cross-examination of defendant did not exceed proper limits. In fact, defendant's statement was not even responsive to the question asked. In short, it was a gratuity which may well have come as a surprise to the prosecutor, the court, and defendant's own counsel.

Defendant's brief argues that after the court's warning against putting his character in issue, his trial counsel coached him carefully on the limitation imposed on his testimony by the court's ruling, and that this short statement was unintentional; that is, presumably, it just slipped out. This assessment of inadvertence may well be correct. Nevertheless, there is nothing unusual about inadvertent statements by witnesses during the course of judicial proceedings; such testimony may be all the more telling because of its spontaneity without prior consideration of its effect. Nor can the brevity of such statements serve as any necessary measure of their significance.

In this case, defendant's statement "I am not perverted," however brief and unintentional, was the very type of evidence against which the court had cautioned. It put defendant's character in issue when applied to the specific nature of the charges against him. It opened the door to the rebuttal testimony of D.P.

We conclude that admission of the testimony concerning defendant's conduct with D.P. was not error. In fact, the longer the period of time during which that conduct lasted, coupled with D.P.'s ultimate refusal to continue as the victim, the more probative it became to show defendant's plan to continue his assaults regardless of who the victim might be, and to establish his motive for turning to J.P. We are satisfied there was no abuse of discretion.

## II.

■ Defendant's second argument on appeal is that the trial court erred by allowing testimony of a psychologist, Sally Ives, as to her opinion of whether the victim was sexually abused. Defendant argues that the testimony violated his patient's privilege under 12 V.S.A. § 1612(a).

In 1982 defendant's wife referred their daughter to Dr. Ives for treatment. In order to reach a better understanding of the family dynamics, Dr. Ives met with the defendant for an hour, part of which was a joint session with his wife. During the private session defendant disclosed some information that he requested be kept confidential from his wife dealing with changes over the years in their relationship and in their sexual patterns. This was the only occasion when defendant met with the psychologist.

12 V.S.A. § 1612(a) provides that, absent a waiver, a mental health professional shall not disclose any information acquired while treating a patient in a professional capacity where the information is necessary for the professional to act. In this case, however, the defendant was not a patient of Dr. Ives. The defendant spoke with her in the context of aiding in the treatment of his daughter. They spoke only once, and to the extent that they discussed personal and confidential matters, the purpose and impetus was to help the psychologist understand the daughter's situation. Defendant did not consult Dr. Ives in regard to his own care or treatment.

When a party asserts that a privilege exists and that testimony should thus be excluded, he "has the burden of proving first, that the privilege exists, and second, that the material sought to be protected was in fact privileged." *State* v. *Sweet*, 142 Vt. 238, 239, 453 A.2d 1131, 1132 (1982); *In re T.L.S.*, 144 Vt. 536, 543, 481 A.2d 1037, 1041 (1984). Defendant has not satisfied this burden.

## III.

■ The third issue raised by defendant challenges the fact that some of the jurors were permitted to ask questions of certain witnesses. The procedure followed by the court was to require the questions to be reduced to writing, and then call for any objections by counsel out of the jury's hearing. Defendant concedes in his brief that there were no objections by either attorney "to the juror questions or the form in which the juror questions were

asked." He claims, however, that to permit questioning by jurors in any form constitutes plain error and, therefore, the issue is eligible for review by this Court. We agree that when plain error appears the issue may be addressed on appeal even though not initially preserved for review in the trial court. *State* v. *Mecier*, 145 Vt. 173, 178, 488 A.2d 737, 741 (1984); V.R.Cr.P. 52(b). However, we also note "that plain error will be found only in a rare and extraordinary case." *Id.* We hold that, if the questioning by jurors under the procedure adopted by the court was error at all, it did not rise to the level of plain error; accordingly, we will not consider it further.

## IV.

■ Defendant claims that the prosecutor "indulged in prejudicial misconduct and overkill during the course of the trial with regard to its elicitation of direct and rebuttal testimony of [D.P.] and cross-examination of Defendant."

[A] prosecutor has a duty to present the State's case with earnestness and vigor, using every legitimate means to secure a just conviction, however, there is also a corresponding duty to refrain from improper methods calculated to produce a wrongful conviction and to guard against conduct unintentionally trespassing the bounds of propriety.

*State* v. *Lapham*, 135 Vt. 393, 406, 377 A.2d 249, 257 (1977). Nevertheless, the burden of proving prejudice is on the defendant when claiming prosecutorial misconduct. *Id.* at 407, 377 A.2d at 257 (citing *State* v. *Parker*, 104 Vt. 494, 500, 162 A. 696, 699 (1932)). In addition, the questions propounded on examination and cross-examination are subject to objections and general control by the trial court through its evidentiary rulings. *State* v. *Richards*, 144 Vt. 16, 19, 470 A.2d 1187, 1189 (1983). The exercise of the trial court's discretion should not be disturbed absent a showing, by the party claiming error, of abuse or the withholding of discretion. *Id.*

Defendant characterizes his cross-examination by the prosecutor as a "lengthy hammering." Our examination of the transcript discloses that the prosecutor did examine the defendant vigorously and at length, but that fact alone does not constitute either misconduct or overkill; indeed it is characteristic of the examina-

tion of witnesses by both parties in a hotly disputed adversary proceeding.

The implication contained in defendant's argument, however, seems to be that the prosecutor's "hammering" was deliberately calculated to produce just such an inadvertent statement as in fact it did, thereby opening the door to the one year expansion of the time period during which D.P.'s testimony of defendant's conduct towards him would be admitted. However, this argument is after-the-fact speculation; there is nothing in the record to compel such a conclusion, and we will not indulge an equally speculative exercise of reading such an intent into the prosecutor's cross-examination simply because it was forceful.

Defendant has failed to show that the State exceeded the acceptable limits of vigorous prosecution, and has failed to show any abuse of discretion by the trial court.

## V.

Defendant next claims that it was error for the trial court to deny his motion for mistrial based on alleged "improper and prejudicial rebuttal evidence elicited by the prosecution." Specifically, he argues that "the prejudicial effect of the State's rebuttal testimony concerning the 365-day period of which [D.P.] was allowed to testify in rebuttal, had obvious prejudicial effect on Defendant's right to a fair trial."

This testimony is part of the evidence addressed in connection with Sections I and IV above. We found no reversible error in our review of those issues. We have also indicated in Section I that we found no *unfair* prejudice resulting from D.P.'s testimony, and in Section IV that the prosecutor was not guilty of overkill or other censurable misconduct. We reiterate those holdings and find no abuse of discretion by the trial court.

## VI.

Defendant's next claim of error asserts that the court erred in "failing to immediately set and rule on Defendant's Motion for New Trial regarding newly discovered evidence." On the date set for sentencing, the court "began to consider Defendant's Motion for a New Trial." The court deferred further proceedings at that time in favor of the sentencing hearing, but assured defendant that the motion would be set soon and given a "high pri-

ority." There was no objection to this ruling, and nine days later, defendant withdrew the motion.

The State argues that defendant's claim did not satisfy the test to be applied in ruling on motions for a new trial based on newly discovered evidence. See *State* v. *Robillard*, 146 Vt. 623, 628, 508 A.2d 709, 713 (1986) (citing *State* v. *Smith*, 145 Vt. 121, 131, 485 A.2d 124, 130-31 (1984)). It is unnecessary to explore this claim. We hold that the court's decision to postpone hearing the motion lay well within its discretionary powers. Thereafter, defendant's voluntary withdrawal of the motion rendered it moot; there was nothing for the court to rule on, and nothing before this Court for review.

## VII.

Defendant charges next that the trial court erred when, after first accepting a plea agreement and a plea of guilty on a reduced charge, the court thereafter, upon hearing defendant assert his innocence and reading the presentence investigation report, struck the guilty plea.

Defendant made no objections to the court's action, but raises it here for the first time. He justifies this procedure on the basis of our holding in *In re Meunier*, 145 Vt. 414, 419-20, 491 A.2d 1019, 1023-24 (1985). In that case we held that since a guilty plea involved the waiver of important constitutional rights, a violation by the prosecutor or the trial court of the terms of a plea agreement is plain error which may be considered by this Court on appeal, even if there was no objection interposed below.

Defendant's reliance on *Meunier* is misplaced; the procedural facts are quite different. In this case, the defendant initially agreed with the statement of the facts presented to the court by the prosecutor and the guilty plea to the reduced charges was accepted on that basis. Subsequently, however, he asserted his innocence, thus rendering the factual basis for his plea in conflict. Judgment on the plea was not entered.

V.R.Cr.P. 11(f) provides that:

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

In the light of 11(f) and defendant's protestations of innocence, we hold the court did not abuse its discretion in striking the guilty plea. The terms of the plea agreement itself, which were based entirely on the reduced charges, were not violated by the court. The agreement was no longer applicable to the reinstated charges upon which the defendant went to trial. Therefore, defendant's further argument on this issue, that upon "rejection" of the plea agreement the court failed to advise him of the possible consequences of persisting in a plea of innocent, is without merit.

Finally, defendant refers us to a United States Supreme Court decision in *North Carolina* v. *Alford*, 400 U.S. 25 (1970), for its holding that continued protestations of innocence do not, per se, preclude the court's acceptance of a guilty plea. In that case, however, the evidence against the defendant was noted by the Court as "overwhelming." "Because of the overwhelming evidence against him, a trial [for first degree murder][3] was precisely what neither Alford nor his attorney desired." *Id.* at 37. Such is not the case here; indeed the result hinged in large measure, if not entirely, on the credibility of two juveniles. Under such circumstances, including the assertions by defendant that, in fact, he was not guilty, it was a proper exercise of discretion, after satisfying V.R.Cr.P. 11(f), whether to allow the guilty plea to stand, or to strike the plea. There was no error.

## VIII.

Finally, defendant challenges the sentence as too harsh. He argues that the sentence was, in effect, retaliatory based on his refusal to admit guilt following the trial. In his brief, defendant quotes a statement by the sentencing judge in support of his claim. The challenged comments came as the court advised defendant of his right to appeal and more specifically of his right to seek sentence reconsideration within ninety days. The court said:

> [T]he 90 day reconsideration period may probably be the most important thing that you have available to you. I say that for this particular reason; because . . . during this period of time, you will have ample opportunity to reflect upon the crimes. You will also have an opportunity to make a de-

---

[3] Defendant's plea in *Alford* was to second degree murder. He had been originally charged with first degree murder which carried the possibility of a death sentence.

termination in your own mind and to search your memory and soul as to whether or not in fact you did commit these crimes.

On a reading of the court's statement in its entirety, we agree with the State that the portion of the statement cited by defendant and quoted above is selective and interpreted out of context with the statement as a whole. Considered in the light of all that was said by the court, we do not agree that the sentence was improperly motivated.

The statement in its entirety discloses the court's hope that it would be able to fashion a sentence directed at defendant's eventual rehabilitation, and its feeling of frustration at being unable to do so as long as defendant continued to deny his guilt. The court visualized rehabilitation as unlikely if not virtually impossible until defendant acknowledged responsibility for his conduct. The trial judge also expressed grave concern for the future safety and welfare of a third male child in the household who might well become defendant's next victim.

We are not unmindful of the fact that in the long history of criminal jurisprudence innocent persons have been found guilty. Nevertheless, in this case, the evidence against the defendant was properly admitted and persuasive; the jury found him guilty based on that evidence. We cannot go beyond that in the absence of reversible error and such considerations as newly discovered evidence, ineffective assistance of counsel, and other forms of post-conviction relief, whenever they are appropriate and justified.

We are unable to agree with defendant that the sentence was in retaliation for his refusal to acknowledge guilt, or based on any other improper motive. The offenses charged are among the most serious in the criminal code, and defendant was found guilty. The sentence was within the limits prescribed by the applicable statutes and within the bounds of the court's discretion. We find no abuse of discretion; accordingly, we defer to the sentencing court. *State* v. *Chambers*, 144 Vt. at 384-85, 477 A.2d at 979 (citation omitted).

*Affirmed.*