## State of Vermont v. Wallace Raymond Hurley

[552 A.2d 382]

No. 86-127

Present: Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Costello, D.J. (Ret.), Specially Assigned

Opinion Filed June 24, 1988

*William D. Wright* and *Raymond G. Bolton, Bennington County State's Attorneys*, Bennington, and *Susan Harritt, Assistant Attorney General (On the Brief)*, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr., Defender General*, and *William A. Nelson, Appellate Defender*, Montpelier, for Defendant-Appellant.

**Barney,** C.J. (Ret.), Specially Assigned. Defendant, after trial by jury, was convicted of sexual assault on a minor in violation of 13 V.S.A. § 3252(3). He first moved below for a new trial, and when that was denied, appealed here. We reverse.

On April 9, 1984, defendant was charged with committing sexual acts on a minor during the period from September, 1982 to July, 1983. Defendant requested more precise specification of the alleged criminal acts. After some delay, on October 15, 1984 and before trial, the State was permitted, over defendant's objection, to dismiss that charge. On November 27, 1984, the State filed a new information charging defendant with a sexual act with a minor "on or about the 20th of July, 1983." Arraignment followed on December 10, 1984, but defendant did not come to trial until January 14, 1986, more than a year later. Defendant was not confined during this period, but at liberty on his own recognizance.

At trial evidence was introduced from the victim, a nephew under the age of sixteen at the time, concerning oral copulation and anal penetration involving defendant. Evidence was also introduced from another nephew and niece, cousins of the victim, that from 1971 to 1973 they had been assaulted by defendant under circumstances similar to those for which defendant was then being tried. The trial court instructed the jury that these other allegations, for which defendant had never been charged or tried, were available for the jury's consideration only on the issue

of "modus operandi," the consistency and similarity of the plan or pattern of committing the asserted crime, and must not be taken as evidence that defendant has a "criminal propensity" to commit such acts.

At a hearing before trial the issue of using certain convictions of defendant as challenges to his credibility was brought before the trial judge. He approved the use of a conviction in 1978 for petty larceny for shoplifting a package of Polaroid film, and also for petty larceny in 1979 for stealing some gasoline. At the trial defendant did not take the stand.

On appeal, defendant raises several issues. He first challenges the propriety of admitting evidence of his claimed past sexual misbehavior. Similarly, he challenges the validity of the trial court's evaluation of the availability of the two petty larceny convictions for attacking his credibility. He also asserts his constitutional right to a speedy trial was violated. Lastly, he complains that the complaint brought against him was fatally defective in setting forth the elements of the crime charged and requires dismissal.

## I.

■ Turning first to the issue of introduction of evidence of past sexual misconduct for which defendant has never been charged, we find that particular evidence prejudicial as a matter of law. It supports defendant's claim for a new trial.

The State urges that this evidence is admissible under V.R.E. 404(b) as demonstrating a repetitive plan, pattern or mode of behavior that identifies defendant as the perpetrator and tends to prove that the offending act was committed. The prosecution correctly points out that this evidence was subjected below to the balancing of prejudice against probative value by the trial judge, as called for by V.R.E. 403, and made the subject of a limiting instruction as called for by V.R.E. 105, all in accordance with procedures set out in State v. Catsam, 148 Vt. 366, 379-84, 534 A.2d 184, 193-96 (1987).

Thus, if this evidence, as a matter of law, represented relevance not overwhelmed by prejudicial effect, the lower court ruling can be sustained. State v. Picknell, 142 Vt. 215, 230, 454 A.2d 711, 718 (1982); State v. Parker, 149 Vt. 393, 400, 545 A.2d 512, 517 (1988). Moreover, there is discretion involved. This Court will not

lightly set aside an evaluation by the trial judge relating to prejudice. *Id.* (and cases cited therein).

The State further argues, correctly, that the special nature of sexual assaults on minors has led a number of states to treat almost any evidence of other assaults as admissible under the common pattern or course of conduct exception of their equivalent of V.R.E. 404(b). The justification given is that corroborative evidence supporting the accusations of youthful victims is so hard to come by as to justify an exceptional treatment of evidence of past sexual misbehavior in these cases. 22 C. Wright and K. Graham, Federal Practice and Procedure: Evidence § 5239, at 461-62 (1978); see, e.g., *Commonwealth* v. *King*, 387 Mass. 464, 469-73, 441 N.E.2d 248, 251-53 (1982); *Elliott* v. *State*, 600 P.2d 1044, 1047-49 (Wyo. 1979).

As so often happens in the law, we are confronted with competing interests. On the one hand, however strongly we may caution jurors, charges of sexual misbehavior with minors are of a nature that almost inevitably disposes jurors unfavorably toward the accused and burdens the fairness of the trial. On the other hand, the crime being usually of so secretive a nature, involving possibly frightened, inarticulate and infant witnesses, there is pressure to enlarge the usual parameters of relevant evidence in order to be able to enforce laws against such behavior at all.

If, as is claimed by other jurisdictions, sexual assault cases involving minor victims require special rules, it seems most just, and most consistent with due process concerns, that these special requirements have express statement, rather than stretching existing exceptions beyond their sense in order to accommodate these special cases. Otherwise, it is hard not to be persuaded that the use of previous sexual crimes is anything more than an effort to prove a trait of character, a predisposition to commit such crimes, contrary to V.R.E. 404(a) and (b). The direction of our answers to the dilemmas present in this sort of case has already had exploration in *Catsam*, 148 Vt. 366, 534 A.2d 184.

In that case this Court carefully delineated the delicate handling that is needed to resolve the competing interests in cases of this nature consistent with the demands of due process. The controlling question is stated to be whether or not the evidence is relevant to an issue other than defendant's propensity to commit this kind of crime. *Id.* at 380-81, 534 A.2d at 194. In this sort of case the usual issue other than propensity sought to be proved is

the existence of a plan or scheme of molestation. For relevance, there must be a recognizable similarity between the prior acts and the current charge, and, important for this case, a proximity in time justifying the inference of such a scheme related to the act now charged. *Id.* at 382, 534 A.2d at 194. Without the support of such relevance, the prejudicial nature of such evidence requires its exclusion. See *Picknell*, 142 at 230, 454 A.2d at 718.

We conclude that the evidence of prior sexual misconduct should have been excluded in this case because the alleged conduct occurred ten years in one instance and twelve years in another prior to the crime for which defendant was charged, thus compromising any relevance of such evidence to establish a pattern, plan or modus operandi. It also represents the weakness of evidence which is so remote in time. Taking both concerns together leaves the testimony with too little justification to override its prejudicial effect. Compare *Parker*, 149 Vt. at 402-03, 545 A.2d at 518 (probative value of defendant's prior sexual assault on another male juvenile found to be highly significant in its tendency to establish motive, plan, opportunity, intent and preparation).

## II.

Since a new trial is required, certain issues need not be dealt with because they will probably not recur in the same form. This is true of defendant's complaint that the standards of *State* v. *Gardner*, 139 Vt. 456, 460-61, 433 A.2d 249, 251-52 (1981), were not properly applied in connection with V.R.E. 609 in determining which of defendant's convictions were crimes of moral turpitude available for use by the State for impeachment purposes. See also 12 V.S.A. § 1608. It might be helpful to comment, however, that the record abundantly demonstrates that all of the *Gardner* criteria were presented and argued to the trial court, supporting a conclusion that there has been full compliance. See *State* v. *Foy*, 144 Vt. 109, 113-15, 475 A.2d 219, 222-23 (1984) (failure of the trial court to give adequate consideration to the *Gardner* factors may constitute an abuse of discretion).

## III.

With respect to the speedy trial concerns raised by defendant, the only issue is whether or not there is a constitutional

violation present here that requires dismissal of the prosecution and discharge of defendant. This is not such a case.

Defendant cites *State* v. *Franklin*, 136 Vt. 568, 396 A.2d 138 (1978), as supporting a dismissal here. It is important to have in mind that *Franklin* is unique in the sense that the substantial portion of the delay was a period of total inactivity in the case for which the judicial system had to be held responsible. No such situation is present here. Although the delays here may be subject to criticism from the point of view of ideal practice, they do not rise to the level of constitutional prejudice. Defendant was not incarcerated, the time range covered by the initial charge, its dismissal, and the new charge are not ordinarily a part of the speedy trial concern and defendant's complaint rests almost entirely on the length of time it took the State to assemble the case. See, e.g., *State* v. *Mahoney*, 124 Vt. 488, 490-91, 207 A.2d 143, 145 (1965). It is appropriate to balance against that time the extent to which activities of defendant in connection with the case contributed to the delay. See *State* v. *Dragon*, 130 Vt. 570, 573, 298 A.2d 856, 858 (1972) (reason for delay is relevant in determining when a defendant has been denied the right to a speedy trial). The trial court evaluated all these concerns and we cannot quarrel with its determination that there was no constitutional failure of prosecutorial diligence or sufficient demonstration of prejudice to defendant. See *id.*

## IV.

■ Defendant also argues that the charging information was defective in that it did not contain an explicit statement as to mens rea, the criminal mind-set that criminalizes otherwise innocent acts. Raising the issue for the first time on appeal, defendant is confronted by the provision of V.R.Cr.P. 12(b)(2) which requires that defenses and objections based on claims of defects in an information be raised prior to trial.

Defendant seeks to avoid the strictures of that rule, obviously not complied with here, by arguing that the claim falls within the exception in the rules applying to failure to demonstrate jurisdiction or charge an offense. Such claims may be ruled on by the court, "at any time during the pendency of the proceedings." Unless this exception applies, the defendant's claim of error is

clearly compromised by *In re Stevens*, 146 Vt. 6, 9, 497 A.2d 744, 747 (1985).

But defendant fares no better under the jurisdictional or defective charge exception. The fundamental test is whether the charging document sufficiently informed defendant of the basis and nature of the charge against him. The offense was set out in the language of the statute, 13 V.S.A. § 3252(3). That statute makes no statement about any required criminal intent or mens rea, but this is not unusual, and the same absence exists in our statutory definitions of larceny, for example. 13 V.S.A. §§ 2501 and 2502; *State* v. *Hanson*, 141 Vt. 228, 232, 446 A.2d 372, 374 (1982).

This does not mean that an "evil mind" need not be proved in charges under larceny or the sexual assault statute. As we recently concluded in *State* v. *Audette*, 149 Vt. 218, 221, 543 A.2d 1315, 1316 (1988) (citing *Morissette* v. *United States*, 342 U.S. 246, 263 (1952)), "guilty intent may be implied where not expressly stated in a statute." See also *State* v. *Day*, 150 Vt. 119, 123, 549 A.2d 1061, 1064 (1988) (concluding that intent, though not explicitly stated, is an element to the offense of operating a motor vehicle without the owner's consent). Defendant argues from the special case of 13 V.S.A. § 4005 as interpreted by *State* v. *Kerr*, 143 Vt. 597, 604-05, 470 A.2d 670, 673-74 (1983), that the failure of any statute to set out a requirement of a mental component means that no such component has been legislated into the offense, thus making the sexual assault statute imperfect. This reads *Kerr* much too broadly. What may be true of a charge of possession of a handgun in commission of a felony is not necessarily applicable in connection with the definition of other crimes, particularly those with common law histories. See *Audette*, 149 Vt. at 221, 543 A.2d at 1317; see also 75 C.J.S. *Rape* § 1 (rape was recognized at early common law).

But, more to the point, the trial proceeded on the basis of a crime involving criminal intent, and the proof conformed. In such a case, with the issue raised only on appeal, the defendant has no grounds to complain of a failure of the information to spell out a mens rea component. Defendant has failed to show how the preparation or presentation of his defense was in any significant way hampered by this omission; a crime was charged and no jurisdictional shortcoming is present. See *Hagner* v. *United States*, 285 U.S. 427, 431 (1932) (formal defects in indictments which are not prejudicial are to be disregarded).

*Reversed and remanded for a new trial.*