2005 VT 17

**STATE of Vermont v. James A. ANDERSON**

[868 A.2d 716]

No. 03-553

¶ 1. January 27, 2005. Defendant James Anderson was convicted of one count of sexual assault on a minor in violation of 13 V.S.A. § 3252(a)(3). He now appeals, contending that the district court erred in admitting evidence of uncharged sexual misconduct pursuant to Vermont Rule of Evidence 404(b). We conclude that the court properly admitted the evidence for the purpose of demonstrating a common plan or scheme in defendant's actions towards his victim, and we therefore affirm the district court.

¶ 2. In October of 2000, defendant's minor niece, R.D., wrote a letter to one of her teachers indicating that defendant had sexually abused her the previous

spring. The teacher and other school personnel then met with R.D. and submitted a report to the Department of Social and Rehabilitation Services (SRS). The following day SRS social worker Ronnie Cohen and State Trooper Greg Campbell interviewed R.D., who told them that, before March of 2002, she frequently babysat for her cousins at defendant's house. She went on to describe an incident in March when defendant came home while she was babysitting and joined in when she began wrestling with her cousins. R.D. said that during the horseplay defendant grabbed her buttocks inappropriately for several seconds. After they stopped wrestling she left to put the children to bed and then returned to lie on the couch and watch television. She said that defendant later joined her on the couch where, despite her efforts to stop him, he unhooked her bra and fondled her breasts, placed her hand on his penis, asked her to engage in oral sex, and then pulled down her shorts and digitally penetrated her vagina.

¶ 3. R.D. said that she did not report this incident immediately because defendant had threatened to kill her, and she was afraid that nobody would believe her. She said she no longer wanted to be alone at defendant's house, and only babysat there one more time. Further, she said that when she did see defendant in the months following the incident he would take advantage of any momentary privacy to grab her breasts and buttocks, and would then flash her a smile. Following the interview, Trooper Campbell sought and obtained a wire warrant to monitor and record a telephone conversation between R.D. and defendant. During that conversation, defendant made several incriminating statements in response to R.D.'s questions, and Trooper Campbell decided to interview him the next day. In the interview, defendant denied all of R.D.'s allegations other than the wrestling incident, and claimed that, if he had digitally penetrated her vagina, it was unintentional. Trooper Campbell then arrested defendant, who was later arraigned on one count of sexual assault on a minor in violation of 13 V.S.A. § 3252(a)(3).

¶ 4. In July 2003, the State filed notice that it intended to introduce evidence of other bad acts at trial. The notice indicated that R.D. would testify about defendant's conduct in the months following the charged incident, particularly his attempts to grab and fondle her in passing moments of privacy. The State further claimed that R.D. would recount a specific incident when defendant attempted to touch her vagina under the table during a card game. In the notice, the State argued that the evidence was admissible to help explain R.D.'s delay in reporting the assault.

¶ 5. Defendant filed a motion in limine objecting to the State's intentions, and the court held a hearing to address the issue. After the State withdrew its effort to introduce evidence about the incident during the card game, the court ruled the remaining testimony admissible for the purpose of demonstrating a common plan or scheme in defendant's conduct towards R.D. The court further observed that the evidence could be relevant to counter defendant's initial claim that any inappropriate touching was accidental or inadvertent. The court was not persuaded, however, by the State's argument that the uncharged conduct helped explain R.D.'s delay in reporting the sexual assault.

¶ 6. At trial, R.D. testified, over defense objection, about the occasions when defendant would touch her breasts or buttocks in passing. Before deliberations, the court instructed the jury to only consider this testimony for the limited purposes of determining whether defendant had engaged in a common plan or scheme of sexualized conduct towards R.D., or

whether the charged conduct was accidental or inadvertent. The jury returned a guilty verdict, and the court entered judgment against defendant. This appeal followed.

¶ 7. We review a trial court's decision to admit evidence of uncharged conduct pursuant to V.R.E. 404(b) to determine whether the evidence "was relevant and material to the cause of action, and if so, whether its admission was so prejudicial as to outweigh its probative value." *State v. Lipka*, 174 Vt. 377, 390, 817 A.2d 27, 38 (2002). Review is deferential, however, and we will reverse "only if the [trial] court withheld or abused its discretion ... and a substantial right of [the] defendant was affected by the alleged error." *Id.*

¶ 8. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Because the phrase "such as" precedes the enumeration of permissible purposes for character evidence, we have recognized that the list is not exclusive. *State v. Robinson*, 158 Vt. 286, 289, 611 A.2d 852, 854 (1992). In sexual assault cases, particularly those involving the family member of a minor, we have held that Rule 404 permits the admission of evidence regarding uncharged conduct to show a pattern of misconduct towards the victim. E.g., *State v. Forbes*, 161 Vt. 327, 332-33, 640 A.2d 13, 16 (1993). In such cases, the evidence is admissible to put the victim's claims in context, as we have observed that allegations of a single act of sexual assault by a family member, removed from the attendant circumstances of secrecy, oppression, and recurrence, "are likely to seem incongruous and incredible." *Id.* at 331, 640 A.2d at 15.

¶ 9. In this case, defendant's attitude and actions towards R.D. in the months following the sexual assault demonstrate a pattern of intimidation and sexually possessive behavior. See *State v. Cardinal*, 155 Vt. 411, 415, 584 A.2d 1152, 1155 (1990) (admitting evidence of uncharged conduct to show defendant's "proprietary sexual interest" in his victim). This type of conduct is often part of a domestic abuser's ongoing efforts to subjugate the victim and perpetuate a relationship based on power, isolation, and control. We have therefore observed that strictly limiting an abuse victim's testimony to a description of the charged offense may undermine his or her credibility in the eyes of the jury. *Forbes*, 161 Vt. at 333, 640 A.2d at 16. Here, defendant took advantage of the occasional opportunity to reassert his dominance over R.D., and, presumably, to remind her of the threats he made during the sexual assault. Testimony about these incidents helped to reveal the larger context surrounding the charged conduct, and it was thus within the trial court's discretion "to allow the victim to tell enough of [her] story to preserve its integrity as a credible one." *Id.*

¶ 10. Defendant contends that *Forbes* is inapposite because that case involved an incestuous relationship between a father and daughter, and because, unlike *Forbes*, the uncharged conduct at issue in this case occurred after the alleged assault. These contentions are unavailing. First, while it is true that in *Forbes* we were concerned about the shocking and perhaps incredible nature of incest allegations, *id.* at 332, 640 A.2d at 16, many of the same concerns arise when, as here, a niece accuses her uncle of sexual assault. In fact, Vermont law forbids sexual activity between an uncle and niece, 15 V.S.A. §§ 1, 3; 13 V.S.A. § 205, making

this assault incestuous within the common meaning of that term. Second, although the uncharged conduct at issue in *Forbes* preceded the charged incident, 161 Vt. at 329-30, 640 A.2d at 14, there is no reason that conduct occurring after an assault cannot similarly demonstrate a pattern of sexually abusive behavior. Defendant's common scheme or plan is just as evident from the intimidating behavior that followed the charged incident as it might be from any conduct that occurred beforehand. We therefore find defendant's attempts to distinguish *Forbes* unpersuasive.

¶ 11. Having concluded that the evidence of uncharged conduct was admissible pursuant to V.R.E. 404(b), we must still determine whether the danger of unfair prejudice substantially outweighed the testimony's probative value for purposes of Rule 403. V.R.E. 403; accord *State v. Winter*, 162 Vt. 388, 399-400, 648 A.2d 624, 631 (1994). As discussed above, the evidence had significant probative value for the purpose of demonstrating a common scheme or plan in defendant's relationship with R.D. For the same reason, the testimony necessarily tended to prejudice the jury against defendant's cause. The rule does not protect against *all* prejudice, however, only the unfair prejudice that arises from evidence whose "primary purpose or effect is to appeal to a jury's sympathies [and which] ... may cause a jury to base its decision on something other than the established propositions in the case." *State v. Bruyette*, 158 Vt. 21, 31, 604 A.2d 1270, 1274 (1992) (internal quotations omitted). The evidence showed that the uncharged misconduct here was directed towards the same victim as the charged conduct. As such, it related only to the charged incident, and did not raise a substantial danger of the jury unfairly concluding that defendant acted in conformity with his behavior on previous occasions with other victims. *Forbes*, 161 Vt. at 333-34,

640 A.2d at 16-17. We discern no other unfair prejudice that might result from R.D.'s testimony, and therefore conclude that the district court acted within its discretion in admitting the evidence.

*Affirmed.*