## State of Vermont v. Neal Winter

[648 A.2d 624]

No. 93-130

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 10, 1994

Motion for Reargument Denied July 20, 1994

*Jeffrey L. Amestoy,* Attorney General, and *Susan R. Harritt* and *David Tartter,* Assistant Attorneys General, Montpelier, for Plaintiff-Appellee.

*Barry E. Griffith,* Rutland, for Defendant-Appellant.

**Dooley, J.** Defendant Neal Winter was convicted of one count of sexual assault in violation of 13 V.S.A. § 3252(a)(1)(A). He now appeals, raising the single issue that evidence that he committed a sexual assault on another woman, over four years prior to the charged incident, was improperly admitted. We agree and reverse and remand for a new trial.

The incidents for which defendant was charged occurred on two nights in November 1991. Defendant was employed at a group home in Bennington and often was the sole staff person present overnight. The group home, which housed six persons, was run by a local mental health agency as a temporary treatment facility for patients with mental illness or substance abuse problems.

In November 1991, the victim in this case was thirty-two years old, and had entered the group home to serve a house arrest sentence for a DUI conviction. She testified that defendant, whom she had known in passing, began making unwelcome sexual remarks to her. She described the following incidents.

On the first night, defendant entered her bedroom while she was asleep, knelt by her bed and fondled her breast. She awoke and called him a name, whereupon he left. Two nights later, the victim awoke to find defendant performing oral sex on her. Thereafter, he overpowered her and compelled her to have intercourse with him. He warned her against disclosing what occurred, stating that no one would believe her, and threatening to kill her if she talked.

The State charged defendant with lewd and lascivious conduct for the events of the first night and two counts of sexual assault, one involving the oral sex and the other the intercourse, for the events of the second night. At trial, the State called the victim and other residents and staff of the home, who corroborated various details of the victim's account. In the investigation of the claims, defendant denied having had sex with the victim. At trial, however, defendant testified that he did have sex with the victim, but that it was consensual.

Defendant was found guilty of one count of sexual assault, the count charging him with committing nonconsensual oral sex on the second night. After the court imposed a sentence of four to ten years, defendant appealed.

The evidence involved in this appeal was that in August 1987, when defendant was living in New York state, he sexually assaulted his children's seventeen-year-old babysitter, S.M., on numerous occasions in his home. Although the assaults began by forced vaginal intercourse, on later occasions defendant began with oral sex. S.M. reported the sexual assaults, and they were investigated by the New York police. Defendant stated that he had sex with S.M. on one occasion and that it was consensual.

The State gave notice that this evidence would be introduced through the testimony of S.M., and defendant filed a motion in limine to exclude the evidence. Based on the memoranda of the parties, and without a hearing, the trial court denied the motion. It found the evidence admissible to show motive and a common scheme, but not to show a plan. Holding that admissibility turned on similarity between the former incident and the incident for which defendant is charged, as well as proximity in time, the court found the requisite similarity

and proximity. The court found six similarities: (1) a power differential—the employer/employee relationship with S.M., the relationship of a "prison guard" to the victim; (2) sexual comments as a manner of approach; (3) initial contact with the woman's breasts; (4) the use of physical force to complete the sex acts; (5) oral contact to facilitate intercourse; and (6) a claim of consent as a "cover-up." It concluded that the passage of four years did not render the S.M. incident too remote. The court also balanced probative value against prejudicial effect and found probative value controlled because the State had a need for the testimony to deal with the credibility problem caused by a victim who "was a resident of a group home for the mentally ill."

S.M. testified at the trial. In its instructions, the court explained the limited use that the jury could make of S.M.'s testimony and informed the jury that the testimony could not be considered for propensity purposes. The instructions authorized the jury to consider the evidence only if it showed motive or common scheme. The court defined these authorized purposes:

> As to motive, it is not an essential element of the state's case that it . . . prove that the defendant had a specific goal or motivation or reason to commit these acts alleged. However, whether or not a person had a motive or reason for the doing of an act is proper for your consideration in determining if in fact the person did the act in question, and also in determining the manner that the act in question may have occurred.

> As to common scheme, what this refers to is that if it is claimed that a person on the occasion in question did certain acts in a particular manner, and there is evidence that on a prior occasion that person did similar acts in a similar manner, then one could infer or conclude that it is more likely that the acts in question did occur in the manner alleged.

The court went on to charge the jury that it should look at similarity and proximity in time in determining the weight to be assigned S.M.'s testimony.

The question before us involves the application of V.R.E. 404(b), which provides:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The rule excludes "bad act" evidence "introduced for the purpose of showing a general propensity to commit the acts in question." *State v. Bruyette*, 158 Vt. 21, 27, 604 A.2d 1270, 1272 (1992). The evidence may be admitted, however, if relevant to some other "legitimate issue" in the case. *Id.* Even if the evidence survives the Rule 404(b) test, it still must pass the balancing test of Rule 403. See *State v. Ashley*, 160 Vt. 125, 126, 623 A.2d 984, 985 (1993).

 Although Rule 404(b) is most often invoked in cases in which the defendant is charged with a sexual misconduct crime, we have not carved out a special propensity rule for such crimes as an exception to Rule 404(b). Thus neither before the adoption of the Vermont Rules of Evidence, nor since, have we allowed the admission of acts of sexual misconduct to show a lustful disposition.[1] Even if we had created such a rule in the past, it would now clearly be inconsistent with Rule 404(b). See *Getz v. State*, 538 A.2d 726, 733–34 (Del. 1988); *Mitchell v. State*, 539 So. 2d 1366, 1372 (Miss. 1989); see generally E. Imwinkelried, Uncharged Misconduct Evidence § 4.18, at 4-50 (1994).

Just as we have no special exception to Rule 404(b) for sexual misconduct cases, neither have we adopted special, more liberal, interpretations of Rule 404(b) to allow the admission of prior bad act evidence in such cases, especially when we would not admit similar evidence in other cases. Cf. *State v. Hurley*, 150 Vt. 165, 168, 552 A.2d

---

[1] One author argues that this Court followed a lustful disposition rule at common law in statutory rape cases, and has generally adopted a lustful disposition exception since enactment of Rule 404(b). See Reed, *Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases*, 21 Am. J. Crim. L. 127, 170 & n.238, 188 n.340 (1993). His argument that we followed such a rule at common law is based on a two sentence discussion in *State v. Willett*, 78 Vt. 157, 159, 62 A. 48, 49 (1905), to the effect that evidence of other acts of adultery is admissible in adultery prosecutions and this rule "must be applicable in a prosecution for statutory rape." The statement is dictum, and no authority is cited to support this rule. At best, it is a common law antecedent of the holding of *State v. Forbes*, discussed in the text *infra*.

His argument with respect to our post-Rule 404(b) jurisprudence is based entirely on *State v. Cardinal*, 155 Vt. 411, 584 A.2d 1152 (1990), in which the defendant was charged with sexually assaulting his seventeen-year-old daughter. We upheld the admission of evidence of defendant's violent actions with respect to the victim's fiance because it showed "defendant had a proprietary sexual interest in the victim, his actions being consistent with those of a jealous lover." *Id.* at 415, 584 A.2d at 1155. This is not propensity evidence; defendant's jealous actions corroborated the victim's story without relying on defendant's character.

382, 384 (1988) (explaining special admission rules in other states for child sexual abuse cases). We have, however, considered the special proof problems in child sexual abuse cases in the Rule 403 balancing process. See *State v. Johnson*, 158 Vt. 344, 353, 612 A.2d 1114, 1119 (1992).

The closest we have come to a special rule for prior bad act evidence in sexual misconduct cases is when, in a prosecution for sexual abuse of a child on a particular occasion, the State has been allowed to show that the act charged is only one of a continuous series of acts. See *State v. Forbes*, 161 Vt. 327, 330–31, 640 A.2d 13, 14–15 (1993). We recently acknowledged that we must be "vigilant" in reviewing uncharged misconduct evidence because of the danger of misuse and the potential for unfair prejudice to the defendant, and reiterated that the grounds for admission itemized in Rule 404(b) are not exclusive. *Id.* at 330–32, 640 A.2d at 15–16. We then held such evidence is admissible to supply a context for the charged acts:

> The point of establishing the existence of an incestuous relationship was not to make an issue of defendant's general character for sexually abusing females of minor age. Rather, the point was to establish specifically defendant's propensity to engage in sexual contact with his daughter as an object of his desire.

*Id.* at 331, 640 A.2d at 15. The *Forbes* holding is fully consistent with Rule 404(b), and it is applicable only when there are continuous acts with the same victim.

We must also emphasize that the grounds for admission specified in Rule 404(b) are not magic words, the utterance of which automatically admits all uncharged misconduct evidence. The State has the burden to show precisely how the proffered evidence is relevant to the theory advanced, how the issue to which it is addressed is related to the disputed elements in the case, and how the probative value of the evidence is not substantially outweighed by its prejudicial effect. See *People v. Golochowicz*, 319 N.W.2d 518, 524 (Mich. 1982). The evidence must relate to an element of the offense or the defense that is genuinely in issue. *Id.*; see also *State v. Goodrich*, 432 A.2d 413, 417 (Me. 1981); *State v. Blackey*, 623 A.2d 1331, 1333 (N.H. 1993).

Recognizing that it could not admit S.M.'s testimony on propensity grounds, the trial court relied on two nonpropensity grounds, motive and common scheme. We conclude that neither applies in this case.[2]

The clearest example of using a prior crime to establish motive is when the victim knows that the defendant committed the prior crime and the defendant kills the victim to prevent disclosure. We have used similar logic in sexual assault cases. For example, in *State v. Recor*, 150 Vt. 40, 549 A.2d 1382 (1988), the defendant was charged with sexually assaulting his stepdaughter in the summer of 1984. On direct examination, the stepdaughter testified that defendant had sexually assaulted her on the occasion charged. On cross-examination, the stepdaughter testified that she hated defendant, in fact had hated him since at least 1982, because he was not her natural father, he disciplined her, and he made her do chores. On redirect, the State was allowed to rebut the defendant's attempt to show the victim's motive to lie with evidence that the real reason for the victim's hatred was that defendant had also sexually assaulted her in 1982. We upheld the admission of the rebuttal evidence as going to motive, thus falling within a permissible use of evidence under Rule 404(b). *Id.* at 44, 549 A.2d at 1386.

We liberally allowed bad act evidence bearing on motive in *State v. Jones*, 160 Vt. 440, 631 A.2d 840 (1993), and *State v. Parker*, 149 Vt. 393, 545 A.2d 512 (1988). In each case, the uncharged misconduct evidence was connected to the offense charged to explain why the offenses occurred as they did. In *Jones*, the uncharged misconduct evidence consisted of love poems written by the defendant to the minor victim that explained the defendant's desires. 160 Vt. at 444–45, 631 A.2d at 844. In *Parker*, the prior bad acts were sexual assaults on the victim's older brother, who became unavailable to the defendant thereby causing the defendant to switch his attention to the victim. 149 Vt. at 399, 545 A.2d at 516.

■ In this case, however, there is no connection between the alleged assault on S.M. and the assault on the victim that explains why the latter occurred as alleged. Indeed, the logic the jury was invited to use was that because defendant was motivated by a desire

---

[2] The State has not asked us to examine other possible grounds for admission, and we have not done so. We believe a shift of grounds would be particularly inappropriate in this case in which the trial court carefully explained to the jury the permissible uses of the uncharged misconduct evidence, and we have concluded each of those uses was in error.

for sexual gratification in assaulting S.M., it was more probable that he was similarly motivated in assaulting the victim in this case. As such, this is no more than an impermissible propensity analysis. See *State v. Saltarelli*, 655 P.2d 697, 700 (Wash. 1982) (evidence of defendant's prior assault on another woman not logically related to rape of victim, and therefore "evidence seems to achieve no more than to show a general propensity to rape, precisely forbidden by [Rule] 404(b)"). Moreover, it admits the uncharged misconduct evidence as bearing on an issue not contested. There is no question that defendant was motivated by sexual gratification whether or not there was consent. We conclude that the evidence could not be admitted under Rule 404(b) to show motive.

We also cannot accept the alternative rationale advanced by the trial court that the uncharged misconduct evidence is relevant to show a common scheme. Rule 404(b) does not mention this rationale as grounds for admission, although this phrase has been used in some of our cases, see, e.g., *State v. Chenette*, 151 Vt. 237, 245, 560 A.2d 365, 371 (1989) (discussing prosecution's argument that prior bad act evidence showed common scheme or plan), and the grounds for admission listed in Rule 404(b) are not exclusive. *Forbes*, 161 Vt. at 332, 640 A.2d at 16. The concept of a common or single scheme has been developed to determine when it is appropriate to try separate criminal acts of the defendant together in one case. See V.R.Cr.P. 8(a)(2) (multiple offenses may be joined if they constitute "parts of a single scheme or plan"); *Johnson*, 158 Vt. at 350–51, 612 A.2d at 1117–18 (discussing single scheme theory). Using uncharged misconduct evidence to show a common scheme is essentially indistinguishable from using such evidence to show a plan, another purpose endorsed by the rule.

The use of uncharged misconduct evidence to show a plan is described in detail in *State v. Catsam*, 148 Vt. 366, 379–82, 534 A.2d 184, 193–94 (1987), a case of multiple sexual assaults on a minor victim. We held:

> Evidence that the defendant previously molested the victim, and threatened her with harm if she were to reveal the incident, gives rise to the legitimate inference that because of the manner in which the prior sexual acts were perpetrated, the prior acts and the charged crime were part of a concerted scheme or plan of molestation. If the evidence of prior acts establishes the existence of such a plan, the necessary connection between the prior

acts and the crime charged is present, bringing the evidence within the scope of Rule 404(b).

*Id.* at 381, 534 A.2d at 194. We acknowledged, however, that admission of uncharged misconduct evidence to show a plan "comes perilously close" to using such evidence to show propensity and required "a clear inference of the existence of a plan from the prior acts." *Id.* at 381, 382, 534 A.2d at 194. Two factors were found to be prerequisites to drawing that inference: "similarity between the prior acts and the crime charged and proximity in time." *Id.* at 382, 534 A.2d at 194.

Our acknowledgement of the danger of admitting uncharged misconduct evidence to show a plan demonstrates an understanding that cases like *Catsam* can cause courts to stretch traditional logical constraints. See, e.g., *State v. Brooks*, 810 S.W.2d 627, 633 (Mo. Ct. App. 1991) (discussing state courts' adoption of so-called "spurious plan" theory); see generally Imwinkelried, *The Plan Theory for Admitting Evidence of the Defendant's Uncharged Crimes: A Microcosm of the Flaws in the Uncharged Misconduct Doctrine*, 50 Mo. L. Rev. 1 (1985). Our *Catsam* insistence on a "clear inference of the existence of a plan" is intended to ensure that a "stretch" does not become a method of selective and arbitrary use of propensity evidence. *Catsam*, 148 Vt. at 382, 534 A.2d at 194.

The trial court here recognized the difficulty of drawing the inference of the existence of a plan from the S.M. evidence and attempted to evade the *Catsam* holding by finding that the S.M. events were too remote in time to show a plan, but that instead they showed a "common scheme." Even if we thought that there was some distinction between a scheme and a plan such that temporal proximity is unnecessary for a scheme, we cannot so easily eviscerate the *Catsam* requirements without crossing the "perilously close" line to propensity evidence.

*Catsam* clearly holds that temporal proximity is a prerequisite to admission in plan or scheme cases. *Id.* Thus, we have followed the majority of states in rejecting the notion that temporal remoteness goes only to the weight of the evidence, not its admissibility. Compare *State v. Jones*, 369 S.E.2d 822, 825 (N.C. 1988) (proximity in time determines not only weight, but admissibility), with *State v. Casady*, 491 N.W.2d 782, 785 (Iowa 1992) (temporal remoteness "affects the weight rather than admissibility" of proffered evidence). See generally Imwinkelried, Uncharged Misconduct Evidence, *supra*, § 8:08, at 8–16 ("more sensible prevailing view" is that temporal remoteness can render evidence legally irrelevant, hence inadmissible).

We have not adopted hard-and-fast time limits; we believe that the necessary proximity must vary with the circumstances. For example, in *State v. Hurley*, the defendant was charged with sexually assaulting his nephew, and we held that evidence that he had sexually assaulted cousins of the victim some ten to twelve years before the charged incident was too remote to be admitted. 150 Vt. at 169, 552 A.2d at 385. By contrast, in *Catsam*, we held that incidents involving the same victim and going back two years before the charged event were properly admitted. 148 Vt. at 382, 534 A.2d at 194.

◼ The precise amount of elapsed time is less important than the relation between the passage of time and the inference that there is an overall plan to the defendant's actions. Thus, in child sexual assault cases, we see no difficulty in admitting evidence of much earlier assaults on the victim when the evidence also shows such assaults have continued right up to the charged event. See *Ashley*, 160 Vt. at 126, 623 A.2d at 985 (evidence of assaults on the victim going back over six years). Similarly, the facts may show that a defendant has lacked the opportunity to put a plan into effect despite the passage of long periods of time. For example, the defendant may have been in prison and unable to commit similar crimes until released. See, e.g., *State v. Crocker*, 409 N.W.2d 840, 843 (Minn. 1987); *State v. Davis*, 398 S.E.2d 645, 650 (N.C. Ct. App. 1990).

◼ In this case, the State's theory that defendant had a plan or common scheme linking his assault on S.M. to his assault on the victim here founders upon the passage of over four years between the two assaults. Indeed, in the intervening four years, defendant moved from New York to Vermont and apparently had started a new life. There is no evidence of acts of sexual misconduct between the events,[3] nor a showing of lack of opportunity. In similar circumstances, other courts have found the uncharged misconduct evidence too remote. See *State v. Miller*, 821 S.W.2d 553, 555 (Mo. Ct. App. 1991) (two instances involving solicitation for prostitution of minor eight and four years prior to current charged offense "fail to reflect a series or sequence of acts toward the accomplishment of an overall objective"); *State v. Lewis*, 583 N.E.2d 404, 408 (Ohio Ct. App. 1990) (evidence of rape committed four years previously "too temporally remote"); *State*

---

[3] The State originally noticed that it intended to show that defendant sexually abused H.D., a sixteen-year-old friend of S.M., at his home also in August 1987. This evidence was not offered at trial.

*v. Cox*, 787 P.2d 4, 6 (Utah Ct. App. 1990) (two years is too long when there is no apparent connection between two sexual assaults). We agree with the trial court that the evidence of defendant's assault on S.M. was too remote to be admitted as a plan.

The real import of the trial court's distinction between a common scheme and a plan appears to be in its view that the uncharged misconduct and the charged conduct were so similar that evidence of the uncharged misconduct could be admitted to show a common scheme despite its temporal remoteness.[4] Although modus operandi is normally used to show identity, see Imwinkelried, Uncharged Misconduct Evidence, *supra*, § 3:10, at 3–21, some courts have held that a showing of modus operandi can go to other issues in the case. Indeed, some courts have held that modus operandi evidence is admissible when the issue in dispute is whether the victim consented to the sexual activity. See *State v. Plaster*, 424 N.W.2d 226, 231 (Iowa 1988); *Youngblood v. Sullivan*, 628 P.2d 400, 402 (Or. Ct. App.), *review denied*, 634 P.2d 1347 (Or. 1981). We need not determine whether a modus operandi theory might be applicable here because the similarity between the uncharged misconduct and the charged conduct is not sufficient to show a modus operandi.

In modus operandi cases, the "'pattern and characteristics' of the prior acts must be so distinctive, in effect, to constitute the defendant's signature." *Bruyette*, 158 Vt. at 27, 604 A.2d at 1273 (quoting *State v. Hall*, 697 P.2d 597, 600 (Wash. Ct. App. 1985)). The analysis focuses on the similarity between the uncharged act and the charged act looking for a "few common features that are unique . . . [or] a larger number of them, less remarkable." *Id.* at 28, 604 A.2d at 1273. In making this kind of comparison we must look at both the similarities and the dissimilarities. See *Peek v. State*, 488 So. 2d 52, 55 (Fla. 1986); *State v. Pratt*, 785 P.2d 350, 356 (Or. 1990).

We agree with the trial court that there are enough similarities to meet the *Catsam* test. See 148 Vt. at 382, 534 A.2d at 194 ("similarity between the prior acts and the crime charged" is crucial factor to establish plan). There are not, however, unique features in this case;

---

[4] In view of our analysis, we need not decide whether temporal remoteness defeats the -use of modus operandi to admit uncharged misconduct evidence. Cf. Imwinkelried, Uncharged Misconduct Evidence, *supra*, § 3:11, at 3–23 to -24 (in determining whether requisite showing of high degree of similarity between charged and uncharged crimes made to demonstrate modus operandi, courts normally consider three factors: temporal, and to lesser degree, geographic proximity, and resemblance of methodologies).

moreover, similarities coexist with dissimilarities. We must look at the similarities between the prior bad act and the charged offense in relation to the issues in the case. Here, the issue is whether the victim consented to the sexual activity. Most of the similarities in this case are consistent with both defendant's and the victim's version of events. For example, defendant's use of oral sex is consistent with either consensual or nonconsensual activity; his sexual comments could be considered an approach for consensual sex.

We would also give particular weight to connections between events. For example, the State responds to the difference in setting and victim age by arguing that in each case defendant was in a position of power over the victim. That argument would better support the State's theory if the State had showed that defendant reached a position of power that then enabled him to have sexual relations with women. There was no such showing here.

We conclude that the evidence of the sexual assault on S.M. was not admissible to show either motive or common scheme. Accordingly, its admission violated Rule 404(b).

As noted earlier, assuming that the proffered evidence meets the requirements of Rule 404(b), the evidence must also pass the Rule 403 balancing test, in which the probative value of the evidence is compared to any unfair prejudicial effect. That balancing is highly discretionary. See *Parker*, 149 Vt. at 401, 545 A.2d at 517. The trial court performed the balancing here, determining there was a need for the evidence because the complaining witness had "inherent credibility problems as she was a resident of a group home for the mentally ill."

As we have expressed in other decisions, the potential unfair prejudice to the defendant is great from evidence of a past unpunished crime that is similar to that for which he is charged. See *Forbes*, 161 Vt. at 330, 640 A.2d at 15 (such evidence changes calculus of probabilities used by jury and can tip balance against defendant); *State v. McCarthy*, 156 Vt. 148, 158, 589 A.2d 869, 875 (1991) (uncharged misconduct evidence showing past unpunished sex crime is most prejudicial evidence imaginable and was "incendiary" in this case); *Catsam*, 148 Vt. at 383, 534 A.2d at 195 ("no potentially more inflammable evidence" can be discerned). That high potential for unfair prejudice was present here.

In cases in which such high potential for prejudice exists, we have often noted a related high probative value. See *Bruyette*, 158 Vt. at 31, 604 A.2d at 1275 (evidence was "highly probative on the issue of

identity"); *Parker*, 149 Vt. at 402–03, 545 A.2d at 518 (probative value "was highly significant in its tendency" both to establish motive, opportunity, intent, preparation and plan, as well as to rebut defendant's characterization of himself). In this case, however, the probative value of the uncharged misconduct evidence is weak. Even accounting for the court's wide discretion, we conclude that probative value was substantially outweighed by the danger of unfair prejudice.

The trial court emphasized the need for the evidence because of the victim's situation. We agree that the State's need for the evidence is a major factor in the balancing process. See *Catsam*, 148 Vt. at 383, 534 A.2d at 195 (State's need to present evidence of prior sexual contact with victim important in light of traditionally sparse direct evidence of child sexual assault). However, the court ruled on the motion in limine without hearing and without knowing what evidence was available to the State to prove its case. Because of the presence of others in the building on the nights in question, the State had available "substantial evidence, aside from the victim's testimony" to meet its burden. *Id.* We do not believe that the fact the victim was serving a house arrest sentence by itself shows that the State needed the evidence.

There is a final factor that was not considered by the trial court—that is, how definitely the State has proved defendant's commission of the uncharged misconduct. See Imwinkelried, Uncharged Misconduct Evidence, *supra*, at § 8.04, at 8–10 to –11. The record indicates that S.M. reported to the police her allegation of defendant's sexual assaults upon her, but he was not criminally charged for them. Defendant was charged with providing alcoholic beverages to S.M., who was then a minor.

We have adopted the rule of *Huddleston v. United States*, 485 U.S. 681, 690 (1988), that admits uncharged misconduct evidence when the jury could find that the uncharged misconduct has occurred by a preponderance of the evidence. See *State v. Robinson*, 158 Vt. 286, 290, 611 A.2d 852, 854 (1992). The court is not required, under any standard of proof, to make a preliminary determination that the misconduct occurred or that the evidence of its occurrence meets a higher-than-normal standard of proof. Many states have rejected *Huddleston* and imposed a higher burden on the State to prove the uncharged misconduct occurred as a prerequisite to admission of the evidence. See *Getz*, 538 A.2d at 734 (proof must be "plain, clear and conclusive") (quoting *Renzi v. State*, 320 A.2d 711, 712 (Del. Super. Ct. 1974)); *Ture v. State*, 353 N.W.2d 518, 521 (Minn. 1984) (evidence must be "clear and convincing").

■ Our adoption of a low threshold for admission requires the trial court to look at the strength of the proof of the uncharged misconduct evidence in balancing under Rule 403. We have expressed concern about the use of uncharged misconduct evidence when the record shows that there was an official investigation of the allegation and "insufficient evidence was found to pursue it." *McCarthy*, 156 Vt. at 155, 589 A.2d at 873. The court must weigh against admission the State's failure to show why an allegation, that was not prosecuted four years ago, should be presented before the jury now.

The State has not claimed that the admission of the testimony of S.M. was harmless. In view of the jury's split verdict, we cannot say it was harmless.

*Reversed and remanded.*