Justice Flaherty, with whom Justice Robinson joins, dissenting. “In a very real sense a defendant starts his life afresh when he stands before a jury, a prisoner at the bar.” People v. Zackowitz, 254 N.Y. 192, 172 N.E. 466, 468 (1930) (Cardozo, C.J.). I respectfully dissent from the holding of the majority in this case. I do so because I conclude that the testimony of Beth was not properly admitted under Rule 404(b) of the Rhode Island Rules of Evidence. To be sure, our jurisprudence has deemed the admission of other-bad-acts evidence to be a flexible concept. But it is my opinion that, in this case, the elasticity of the rule has been stretched beyond the breaking point. We have in this jurisdiction a well-established body of case law with respect to the admissibility of 404(b) evidence of a defendant’s sexual offenses against a person other than the complaining witness. For such evidence to be properly admitted, we have said, time and time again, that it must be (1) nonremote and similar to the charged conduct; (2) admitted only to prove a Rule 404(b) exception that is relevant to proving the crime charged; and (3) reasonably necessary to prove the crime charged. See State v. Cavanaugh, 158 A.3d 268, 280 (R.I. 2017); State v. Mitchell, 80 A.3d 19, 28-29 (R.I. 2013); State v. Merida, 960 A.2d 228, 237, 239 (R.I. 2008); State v. Coningford, 901 A.2d 623, 627 (R.I. 2006); State v. Mohapatra, 880 A.2d 802, 806 (R.I. 2005); State v. Hopkins, 698 A.2d 183, 185-87 (R.I. 1997); State v. Davis, 670 A.2d 786, 789, 790, 791 (R.I. 1996); State v. Cardoza, 465 A.2d 200, 204 (R.I. 1983); State v. Jalette, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978).[1] In my opinion; Beth’s testimony falls short in all three respects. I will address each in turn. 1 Nonremote and Similar It is well-settled law that, for purposes of Rule 404(b), sexual “[o]ffenses will be considered sufficiently ‘nonremote’ and ‘similar’ when they are ‘closely related in time, place, age, family relationships of the victims, and the form, of the sexual acts.’ ” Mohapatra, 880 A.2d at 806 (quoting State v. Brigham, 638 A,2d 1043, 1045 (R.I. 1994)). My quarrel here is with the temporal'factor.[2] I cannot agree that the incidents to which Anna and Beth testified are “closely related in time’’ whatsoever. Id. (quoting Brigham, 638 A.2d at 1045). To be sure, this Court previously has approved the admission of evidence of uncharged sexual offenses against victims other than the complainants, even though the misdeeds were several years removed from the charged crimes. See Merida, 960 A.2d at 230-31, 232, 239 (six years at shortest interval, ten years at longest); Coningford, 901 A.2d at 628 (seven and eleven years, respectively, for two victims); Hopkins, 698 A.2d at 186 (ten years); Davis, 670 A.2d at 790 (nine years).[3] “However, there is a point beyond which such remoteness may not go.” State v. Schlak, 253 Iowa 113, 111 N.W.2d 289, 292 (1961) (holding five years too remote). I believe this case has passed that point, and I believe, respectfully, that with this holding, the Court has written the temporal aspect of Rule 404(b) jurisprudence out of the law. Count 1 charged defendant with first-degree child molestation that occurred sometime at the end of 1987 or the beginning of 1988. That charge involved defendant’s laying eight-year-old Anna, his girlfriend’s daughter with whom he lived, flat on the couch; climbing on top of her; straddling her; removing her pants and underwear; rubbing his penis against her vagina; and penetrating her labia. Count 2 charged defendant with first-degree child molestation at some point in 1990. That charge alleged that defendant forcefully pushed Anna onto his bed, completely undressed her, lay fully on top of her, with his legs between hers, and penetrated her vagina. Count 3 charged defendant with second-degree child molestation sometime between April 1,1992 and August 30,1992. That charge .alleged that defendant grabbed Anna’s breast. As evidence that defendant committed these crimes against Anna, Beth was permitted to testify to a .sexual assault that defendant, her biological father whom she rarely saw,, attempted in 2003, when she was eight years old. Beth said that, as she sat on the edge of defendant’s bed in his single-room apartment, defendant pushed her back on the bed and began taking his and her clothes off; all the while, Beth was struggling to get up. According to Beth, defendant climbed on top of her, and, because she was trying to push him away, he wrapped her arms in his belt and put them above her head. He then put his arms and legs on either side of Beth, straddling her. Beth testified that defendant tried to put his penis in her vagina. According to Beth, his penis actually touched her vagina, but because of her kicking him away as she struggled to get up, he was unsuccessful in his efforts to penetrate her. Beth’s testimony alleging prior’ acts by defendant could be considered similar to the charges set out in- counts 1 and 2, which predate the 404(b) evidence by fifteen years and thirteen years, respectively.[4] Whether we use fifteen or thirteen years as the operative period for analyzing the remoteness of the 404(b) evidence in this case, the amount of time that passed here is simply too great to be considered nonremote under any commonsense definition of the word. There was no indication that the charges involving Anna and the incident about which Beth testified were part of some continuing course of conduct by defendant; rather, as they appeared at trial, they were completely isolated incidents. See Tyson v. State, 232 Ga.App. 732, 503 S.E.2d 640, 641 (1998); State v. Ray, 267 Mont. 128, 882 P.2d 1013, 1015-16 (1994); State v. Jones, 322 N.C. 586, 369 S.E.2d 822, 824 (1988); State v. Chapman, 111 Ohio App. 441, 168 N.E.2d 14, 16 (1959); see also Commonwealth v. Hanlon, 44 Mass.App.Ct. 810, 694 N.E.2d 358, 367 (1998) (allowing subsequent “evidence that the defendant was abusing altar boys from his own parish almost continually over a decade * * * because it demonstrates the ongoing nature of [his] behavior” (emphasis added)). Of course, as the majority notes, “[remoteness is relative, depending upon the circumstances and the conduct in question.” State v. Pignolet, 465 A.2d 176, 181 (R.I. 1983). Therefore, I by no means suggest imposing a bright-line temporal cutoff when it comes to analyzing remoteness for purposes of Rule 404(b). See Ray, 882 P.2d at 1016 (declining to set arbitrary time limits for admitting prior-acts evidence). “It is, however, never to be lost sight of that the defendant is entitled to be tried upon competent evidence and only for the offense charged * * *.” Hall v. United States, 235 F. 869, 870 (9th Cir. 1916) (emphasis added); see also id. at 871 (holding that evidence of assault on another victim three years earlier was too remote); State v. Nicks, 134 Mont. 341, 332 P.2d 904, 904, 906 (1958) (holding that similar crimes in another state four years earlier were too remote); State v. Mou-bray, 139 W.Va. 535, 81 S.E.2d 117, 122 (1954) (holding that the last prior bad act which “occurred more than three years before the commission of the specific offense charged” was too remote). In my opinion, the event Beth described was simply too far removed in time to be used as evidence against defendant in this trial on these charges, and it should have been excluded. The Court today recasts the rule to the extent that, as long as the 404(b) evidence is sufficiently similar to the charged conduct, it need not be sufficiently nonremote. The majority rationalizes this conclusion by saying that temporal relation is but one of many factors to be considered. See Mo-hapatra, 880 A.2d at 806 (holding that, for purposes of Rule 404(b), sexual “[ojffenses will be considered sufficiently ‘nonremote’ and ‘similar’ when they are ‘closely related in time, place, age, family relationships of the victims, and the form of the sexual acts’” (quoting Brigham, 638 A.2d at 1045)). It is my view, however, that the nonremoteness and similarity inquiries should not be conflated. Of the five factors set forth in Mohapatra, 880 A.2d at 806, four address similarities and one squarely addresses temporal proximity. I fail to see how satisfaction of some of those factors obviates the need for satisfaction of the others. If the majority’s reasoning is correct, then we have effectively eliminated the requirement that 404(b) evidence of sexual offenses must be “closely related in time,” id. (quoting Brigham, 638 A.2d at 1045), as that language now has been rendered utterly meaningless. 2 Relevant Rule 404(b) Exception Rule 404(b) permits evidence of a defendant’s other crimes, wrongs, or acts to be admitted for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[5] Although there has been flexibility in the interpretation of the rule, it is beyond dispute that the rule bars such evidence when offered to prove the defendant’s character in order to show that he acted in conformity therewith.[6] Accordingly) “[i]n molestation or sexual assault cases, evidence of a defendant’s prior sexual misconduct cannot be admitted to prove that ‘defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offenses with which he is charged.’ ” Moha-patra, 880 A.2d at 806 (quoting State v. Quattrocchi, 681 A.2d 879, 886 (R.1.1996)). Thus, for Beth’s testimony to have been properly admitted, it must have been offered to prove one of the aforementioned permissible Rule 404(b) exceptions, and that exception must also have been relevant to proving the charges against defendant. And, importantly, it remains our law that “any doubt as to the relevancy of such evidence should be resolved in favor of the accused.” Jalette, 119 R.I. at 627, 382 A.2d at 633. The majority shoehorns Beth’s testimony into the' plan exception under Rule 404(b). I cannot agree. As I have addressed earlier in this dissent, the earlier charges concerning Anna and the later incident that involved Beth were separated by-well over a decade and were completely unconnected incidents in the context of the evidence presented at trial. There was no demonstration by the state that the later sexual misconduct was “part and parcel” of a common scheme or plan by defendant, or that the subsequent act and the charges were “linked as integral components of * * * defendant’s common purpose or plan to commit the current charge[s,]” State v. Aakre, 309 Mont. 403, 46 P.3d 648, 665 (2002), so I can reach no other conclusion than that the plan exception under Rule 404(b) is wholly inapplicable to Beth’s testimony. “Th[is] random and remote act[ ] [in 2003 was] not relevant in establishing that [defendant] acted according to an explicit and premeditated plan in [1988 and 1990].” Commonwealth v. Bradley, 243 Pa.Super. 208, 364 A.2d 944, 946-47 (1976) (other bad acts occurred almost three years after the crime charged). Yet, the majority reasons that evidence of defendant’s molestation of Beth was admissible to prove his “plan,” thirteen to fifteen years earlier, to commit first-degree child molestation, against Anna. Ironically, the plan exception under Rule 404(b) is the one most closely related to the threshold remoteness inquiry. See Aakre, 46 P.3d at 654 (“Indeed, for Rule 404(b) purposes we conclude that proof of mere similarity of crimes is insufficient, on a stand alone basis, to demonstrate a ‘common purpose or plan that results in the repeated commission of the same offense.’ Rather, application of this definition of common scheme also requires showing that the crimes occurred within a time frame that supports -the conclusion that the similar offenses were committed to achieve a common purpose or plan related to the commission of the current , charge.”); State v. Winter, 162 Vt. 388, 648 A.2d 624, 629 (1994) (“[Tjemporal proximity is a prerequisite to admission in plan or scheme cases.”). In that sense, the majority now approves of a thirteen- to fifteen-year.interval as both nonremote and part of a common plan. I am unable to concur with such a holding. In essence, the Court’s holding today “allowfe] a common scheme to be proven by the simple expedient of aggregating similar criminal acts without regard to the time frame within which those acts occurred and without regard to whether those acts were actually part of a common purpose or plan to commit the offense at issue.” Aakre, 46 P.3d at 654. The majority plainly writes that “Anna’s and Beth’s testimony have at least the same amount of similarities as the accounts in Merida[,]” 960 A.2d at 232, to be admitted as proof of a plan. But it is fundamental that “[e]vi-dence of other crimes must be connected by point of time and circumstance. Through this commonality, proof of orie act may reasonably prove a second. However, the passage of time between the commission of the two acts slowly erodes the commonality between them.” Jones, 369 S.E.2d at 824. Despite this erosion, the majority declares that “the length of time that spans between defendant’s alleged abuse against Beth and Anna does not alter our holding.” By aggregating the incidents concerning Anna and Beth without considering the decade-plus interval separating them, “the limited purpose for allowing common scheme evidence under Rule 40.4(b) [is] effectively nullified.” Aakre, 46 P.3d at 654. After all, logic dictates that both similarity and proximity in time are prerequisites to inferring the existence of a plan because “admission of uncharged misconduct evidence to show a plan ‘comes perilously close’ to using such evidence to show propensity * * Winter, 648 A.2d at 629 (quoting State v. Catsam, 148 Vt. 366, 534 A.2d 184,194 (1987)). Accordingly, I firmly believe that “[t]he period of [thirteen to fifteen] years ‘substantially negatefe] the plausibility-of the existence of an ongoing and continuous plan to engage persistently in such deviant activities[,]’ ” and, “[a]s such, the reasoning that gave birth to Rule 404(b) exceptions is lost.” Jones, 369 S.E.2d at 824 (quoting State v. Shane, 304 N.C. 643, 285 S.E.2d 813, 821 (1982)). Additionally, when giving the jury the requisite limiting instruction, see State v. Garcia, 743 A.2d 1038, 1052 (R.I. 2000), the trial justice is required to specify the particular Rule 404(b) exception for which the evidence is being introduced. See State v. Sorel, 746 A.2d 704, 707 (R.I. 2000); State v. Gomes, 690 A.2d 310, 317 (R.I. 1997); State v. Brown, 626 A.2d 228, 234 (R.I. 1993); ' Jalette, 119 R.I. at 627, 382 A.2d at 533. The Seventh Circuit has cogently explained the reason for this necessity: “Because other-act evidence can serve several purposes at once, evidentiary disputes under Rule 404(b) often raise, the following question: Does a permissible ultimate purpose (say, proof of the defendant’s knowledge or intent) cleanse • an impermissible subsidiary purpose (propensity)? On the surface the rule seems to permit this. But if * * * the rule allows the admission of other bad acts whenever they can be connected to ' the defendant’s knowledge, intent, or identity, (or some other plausible non-propensity purpose), then the bar against propensity evidence would be virtually meaningless.” United States v. Gomez, 763 F.3d:-845, 855 (7th Cir. •2014); accord United States v. Miller, 673 F.3d 688, 696-97 (7th Cir. 2012) (explaining that the “list of exceptions in Rule 404(b), if applied mechanically, would overwhelm the central principle” of the rule because “[a]lmost any bad act evidence simultaneously condemns by besmirching character and by showing one or more of’ the permissible purposes (quoting United States v. Beasley, 809 F.2d 1273, 1279 (7th Cir. 1987))). In an effort “[t]o resolve this inherent tension in the rule,” the trial justice is called upon to examine “the chain of reasoning that supports the non-propensity purpose for admitting the evidence.” Gomez, 763 F.3d at 856; see also Jalette, 119 R.I. at 627, 382 A.2d at 533 (“In seeking to attain this particular goal [that the applicable exception is relevant to proving the charge lodged against the defendant], the trial court may insist that the prosecutor point to the specific exception on which he relies and. show how that exception relates to the pending charge.”). The evidence should be excluded under Rule 404(b) “if its relevance to ‘another purpose’ is established only through the forbidden propensity inference.” Gomez, 763 F.3d at 856. To that end, the trial justice “should not just ask whether- the proposed other-act evidence is relevant to a non-propensity purpose but how exactly the evidence is relevant to that purpose — or more specifically, how the evidence is relevant without relying on a propensity inference.” Id. Here, the trial justice listed the following exceptions when he instructed the jury as to the limited purposes for Beth’s .testimony: motive, opportunity, intent, preparation, and plan. The majority now designates but one of those exceptions (plan) as the permissible basis for admitting Beth’s testimony. I do not believe that any of these exceptions applies, let alone all of them. It seems obvious that neither motive nor, intent was “at issue” in this case, and therefore, Beth’s testimony could not have been admitted to shed light on those issues. Quattrocchi,. 681 A.2d at 886; . see also United States v. Lee, 724 F.3d 968, 976 (7th Cir. 2013) (“Simply because a subject like intent is formally at issue when the defendant has claimed innocence and the government is obliged to prove his intent as an element of his guilt [it] does not automatically open the door to proof of the defendant’s other wrongful acts for purposes of establishing his intent.”); Freeman v. State, 486 P.2d 967, 977 (Alaska 1971) (“Manifestly, where there is no dispute as to the issue of the accused’s intent, eviclenee going merely to intent will be superfluous, and its only possible effect will be a deleterious one.”). Notwithstanding the irrelevance, and thus inapplicability, of these exceptions, I also fetil to fathom how the motive, opportunity, intent, preparation, or plan to commit the charged acts could be demonstrated by alleged misconduct that did not occur until a decade and a half later. In other words, how could something that defendant did in 2003 have any tendency to prove his motive, intent, etc., in 1988?[7] . But, even assuming there were a single permissible Rule 404(b) exception, I believe that the trial justice’s instruction did not specify the particular, limited purpose for which the jury could use Beth’s testimony.[8] See Jalette, 119 R.I. at 627-28, 382 A.2d at 533 (“In its charge the trial court should not take a scatter-shot approach and list all of the exceptions to the exclusionary rule. Rather, it shall designate with particularity the specific exceptions to which the ‘other crimes’ evidence is relevant and delete from its charge the remaining exceptions.”). Instead, the trial justice broadly listed multiple grounds for the admission of Beth’s testimony, and this Court has now selected the one that it believes best fits the facts of the case (even though it does not). In my opinion, this is not a sufficient basis for the admission of this testimony. After all, “the grounds for admission specified in Rule 404(b) are not magic words, the utterance of which automatically admits all uncharged misconduct evidence.” Winter, 648 A.2d at 627. Yet this Court now sanctions a situation where the trial justice can simply list all Rule 404(b) exceptions when he imparts a “limiting” instruction to the jury. On appeal, this Court (if it hews to the majority’s approach) may simply opine as to whether any one of them applies. By this decision, the trial justice is now relieved of the burden to examine the “chain of reasoning” to discern whether the evidence’s “relevance to ‘another purpose’ is established only through the forbidden propensity inference.” Gomez, 763 F.3d at 856. In this case, none of the purposes listed by the trial justice were even “genuinely in issue.” Winter, 648 A.2d at 627. And again, even taking the enunciated exceptions at face value, the fact that the 404(b) evidence consisted of an incident so many years after the crimes charged simply precludes its use for those purposes. This conclusion is buttressed by examining “how exactly the evidence [was] relevant to [those] purpose[s] — or more specifically, how the evidence [was] relevant without relying on a propensity inference.” Gomez, 763 F.3d at 856. It seems clear to me that defendant’s later sexual abuse of Beth “was relevant to his motive, intent, [and] plan * * * with respect to the acts for which he was tried only insofar as the [subsequent] sexual abuse tended to show a propensity to commit such acts. Rule 404(b) flatly proscribes the admission of other act evidence for this purpose.” United States v. Fawbush, 634 F.3d 420, 422 (8th Cir. 2011); see also State v. Kirsch, 139 N.H. 647, 662 A.2d 937, 943 (1995) (“Whether nominally labeled motive, intent or common plan, the ostensible purpose for which the prosecution sought to admit evidence of a multitude of other uncharged sexual assaults was to show the defendant’s predilection for molesting young females * * *. At most, this is evidence of the defendant’s disposition to commit the offenses with which he was charged, impermissible under Rule 404(b). Because it was not relevant for a permissible purpose, the evidence should have been excluded, and its introduction was an abuse of discretion.”). To quote the articulate admonitory words of the late Chief Justice Weisber-ger: “In sum the only purpose of this testimony was to show propensity. * * * This result Rule 404(b) will not permit by its express terms. * * * I fear that the opinion of the majority would cause the exceptions set forth in Rule 404(b) * * * to swallow the rule and render it a nullity.” Hopkins, 698 A.2d at 190-91 (Weisberger, C.J., dissenting). Although “[t]he line between Rule 404(b) evidence presented for the impermissible purpose of demonstrating propensity and Rule 404(b) evidence presented for one of the specific non-propensity exceptions is ‘both a fine one to draw and an even more difficult one for judges and juries to follow[,]’” State v. Brown, 900 A.2d 1155, 1160 (R.I. 2006) (quoting Garcia, 743 A.2d at 1052), we must draw the line somewhere so as not to eviscerate the rule. 3 Reasonably Necessary Even assuming that the 404(b) evidence were nonremote and similar, and further assuming it was admitted only to prove a relevant Rule 404(b) exception, it would have been admissible only if it were reasonably necessary to prove the crimes charged. “In determining whether evidence is necessary to establish the state’s prima facie case, ‘the test we must apply is what appeared to be reasonably necessary to the trial justice at the time [the testimony is offered].’ ” Brigham, 638 A.2d at 1046 (quoting Pignolet, 465 A.2d at 182). As a preliminary matter, I do find it significant that the state did not find Beth’s testimony to be necessary to prove its case until the eve of trial — when Beth texted the prosecutor, and not the other way around. In other words, the state was fully prepared to go to trial without her. Thus, at the time the testimony was offered, see id., I believe the trial justice should have taken this lack of need into account. I agree with the statement of the majority that, because she was an adult when she testified, Anna should not have been afforded the same latitude as child complainants. See Mohapatra, 880 A.2d at 808 (“When charges of sexual abuse hinge upon a credibility contest between defendant and child complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant’s testimony.” (Emphasis added.)). But, in my opinion, the Court is now extending that latitude to her anyway. The majority reasons that Beth’s testimony was necessary because the case was entirely a credibility contest between defendant and Anna.[9] This is precisely the rationale that underlies the child complainant cases cited by the majority. See State v. Perez, 161 A.3d 487, 497 (R.I. 2017); Mohapatra, 880 A.2d at 808; Hopkins, 698 A.2d at 187. But see Cavanaugh, 158 A.3d at 281 (involving a late disclosure by an adult complaining witness and quoting Mohapatra, 880 A.2d at 808, for the proposition that “[w]hen charges of sexual abuse hinge upon a credibility contest between [a] defendant and [child] complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant’s testimony”). As the majority sees it, any case prompted by a late disclosure or without physical evidence (be it a sexual assault or molestation case or otherwise) is nothing more than a credibility contest in which evidence of a defendant’s other bad acts can be admitted to bolster the complainant’s testimony. There is no longer any regard for whether the complaining witness is a child, who may be unable to handle the pressures of testifying and accurately recount traumatic events, or an adult. In fact, a defendant need not even testify to render a trial a credibility contest; the sole fact that the defendant goes to trial is apparently enough. Mere cross-examination of a complaining witness to test the veracity of his or her testimony transforms a trial on only those crimes charged into a free-for-all whereby the state can show that the defendant is a bad person who should be convicted, “Mere weakness of the prosecution’s case is insufficient reason to admit irrelevant and prejudicial evidence.” State v. Lammreux, 623 A.2d 9, 13 (R.1.1993). Yet the. majority approves of the trial justice’s allowing Beth to testify simply because the state had the burden of proof and had no evidence other than the testimony of Anna. I do not agree that those reasons make Beth’s testimony reasonably necessary to prove, the charges against defendant. Conclusion Even a defendant charged with the most despicable- of acts is entitled to be tried with evidence that is relevant and which does not highlight his propensity for criminal acts.- Because I believe that the testimony of Beth was improperly admitted, I most respectfully dissent from the Court’s holding in this case and would vacate the conviction and remand .the matter to the Superior Court for a new trial. . To be clear, these cases do not include those relying on the so-called "lewd-disposition” exception to Rule 404(b) of the Rhode Island Rules of Evidence. See State v. Jalette, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978) (adopting the holding that "evidence of other not too remote sex crimes with the particular person concerned in the crime on trial may be introduced to show the accused’s 'lewd disposition or * ⅛ * intent’ towards the person”). It is important to note that the lewd-disposition exception is applicable to 404(b) evidence of uncharged sexual acts against only the complainant, not another victim, See State v. Mitchell, 80 A.3d 19, 29 n.8 (R.I. 2013); State v. Coningford, 901 A.2d 623, 627 n.5 (R.I. 2006); State v. Mohapatra, 880 A.2d 802, 806 n.4 (R.I. 2005). In State v. Pignolet, 465 A.2d 176 (R.I, 1983), this Court extended the lewd-disposition exception solely to admit the “testimony of siblings of .tender years” where the "similar but uncharged sexual conduct [was] closely related in time, place, age, and family relationships of victims [and] where it was" relevant, material, and highly probative of an accused’s lecherous conduct toward the victims over whom the defendant exercised discipline, control, and supervision." State v. Bernier, 491 A.2d 1000, 1004-05 (R.I. 1985) (clarifying the “very narrow” holding in Pig-nolet)', see Pignolet, 465 A.2d at 181-82. In fact, we later said that “Pignolet represented the extreme beyond which we are unwilling to extend the other-crimes (or bad-acts) exception because of its • overwhelming ■ prejudice to defendant and its tendency to be viewed by the trier of fact as evidence that defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offense with which he is charged.” State v. Quat-trocchi, 681 A.2d 879, 886 (R.I. 1996). I find it noteworthy that the author of the Jalette opinion vigorously dissented in Pigno-let, decrying, “the rationale that led to Jalette has been laid to its eternal rest without benefit of so much as a eulogy." Pignolet, 465 A.2d at 384 (Kelleher, J., joined by Bevilacqua, C.J., dissenting); see also Quattrocchi, 681 A.2d at 886 (stating that ”[t]here is1 no question that Pignolet expanded the Jalette doctrine insofar as it related to two’stepdaughters in the same household but went beyond the narrow exceptions set forth in Jalette''). Nonetheless, the majority has seemingly relied on the lewd-disposition exception in explaining how Beth's testimony was relevant to proving the crime that defendant was charged with committing against Anna. The majority, quoting prior case law, writes in its opinion that Beth’s testimony “was indicative of '[the] defendant’s lecherous conduct toward' ^ ⅜ •‘|l [girls] 'over whom he exercised discipline, control, and supervision.' ” State v. Perez, 161 A.3d 487, 497 (R.I. 2017) (quoting Pignolet, 465 A.2d at 182), Again, the “very narrow” (Bernier, 491 A.2d at 1004) holding in Pignolet only "expanded the Jalette doctrine insofar as it related to two stepdaughters in the same household^]” and it "represented the extreme beyond which we are unwilling to extend the otheri-crimes (or bad-acts) exception .* * Quattrocchi, 681 A.2d at 886. . I do not disagree that the Mantón Avenue and Sterling Avenue incidents involving Anna and the incident that Beth described are similar. But I am of the opinion that nonremoteness -and similariiy are distinct inquiries, as discussed infra. . ‘Again, I cite no cases relying on the lewd-disposition exception. This is so because, in a given case where the Rule 404(b) testimony concerns the complaining witness, I may feel it appropriate to analyze the remoteness factor differently than I do in this case. For instance, in State v. Toole, 640 A.2d 965 (R.I. 1994), the defendant challenged the admission of the child complainant’s testimony of uncharged offenses committed against her by the defendant seven to eleven years prior to the charged offenses. Id. at 969. There, because the evidence that the defendant had molested his biological daughter beginning when she was four years old was permitted for the purpose of showing his lewd disposition toward that particular girl throughout her childhood, id. at 971, I would agree that its admission was proper in that case notwithstanding that, at first blush, eleven years seems remote in the plainest sense of the word. . Count 3, which bears, no resemblance, at all to the incident Beth described, involved an incident which occurred eleven years earlier. I acknowledge that the interval between count 3 and the 404(b) evidence is one this Court has affirmed in the past. See Coning-ford, 901 A.2d at 628. . Although we have recognized that the list of exceptions set forth in the second sentence of Rule 404(b) is not exhaustive, see State v. Cavanaugh, 158 A.3d 268, 280 (R.L 2017), none of the other exceptions which have been developed through our case law could possibly apply in this case. See, e.g., State v. Pona, 948 A.2d 941, 950 (R.I. 2008) (evidence also ■admissible when other crimes, wrongs, or acts “are interwoven or in instances when introduction is necessary for ‘a trier of fact to hear a complete and, it is to be hoped, coherent story so as to make an accurate determination of guilt or innocence’ " (quoting State v. Gomes, 690 A.2d 310, 316 (R.I. 1997))); Jalette, 119 R.I. at 627, 382 A.2d at 533 ’(adopting the lewd-disposition exception). . This is precisely, the reason why those permissible purposes outlined in Rule 404(b) are widely recognized as “exceptions” to the character evidence rule. . I do not suggest that none" of the Rule 404(b) exceptions could ever apply to a' subsequent bad act, but it. seems clear to me that only very limited and unusual facts and circumstances would allow for the use of such evidence. For example, a subsequent act that is part of a continuing course of conduct or larger plan or scheme might be admitted as tending to prove the commission of the earlier crime charged. See, e.g., Commonwealth v. Hanlon, 44 Mass.App.Ct. 810, 694 N.E.2d 358, 367 (1998) (“Although the last witness claimed to have been abused in 1990 and 1991, nine years after the last charged act, this testimony was not too remote, given the continuing nature of. the pattern, and the striking similarity of each incident to the charged acts.” (Emphasis added.)). Of course, as in the instance of prior acts, if “subsequent acts are .too remotely related to the act upon which the prosecution is based, in point of time, to be without probative force, such evidence should not be admitted.” Harrison v. State, 235 Ala. 1, 178 So. 458, 459 (1937). . ' I acknowledge that there was no objection raised to the trial justice’s cautionary instruction. . It is noteworthy that defendant did not testify-